1
2
3
4

Ira P. Rothken (State Bar No. 160029)
ROTHKEN LAW FIRM
3 Hamilton Landing, Ste 280
Novato, CA  94949
Telephone: (415) 924-4250
Facsimile:  (415) 924-2905

5
6
7
8

Stuart A. Davidson (State Bar No. 084824)
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

9
10
11

Jennifer Sarnelli (State Bar No. 242510)
GARDY & NOTIS, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone: (201) 567-7377
Facsimile: (201) 567-7337

12
13
14
15

Behram V. Parekh (State Bar No. 180361)
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue
Fourth Floor
El Segundo, CA  90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

16

Interim Co-Lead Class Counsel

17
18
19

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

20
21
22
23
24
25
26
27
28

|  |  |
|---|---|
|  | MDL Docket No. 10-2188 (RMW) |
| IN RE APPLE IPHONE 4 PRODUCTS LIABILITY LITIGATION | **MASTER CONSOLIDATED COMPLAINT AGAINST APPLE AND ATTM** |
| ———————————————— | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO: | **DEMAND FOR JURY TRIAL** |
| All Actions | Judge: Hon. Ronald M. Whyte |

**PRELIMINARY STATEMENT**

1.      This Master Consolidated Complaint ("Complaint") is filed pursuant to the October 8, 2010 Transfer Order of the Judicial Panel on Multidistrict Litigation, and Pretrial Order No. 1, ¶16 [Doc. 12], and presents claims brought against AT&T Mobility LLC ("ATTM") and/or Apple Inc. ("Apple") (collectively "Defendants") in the separate cases filed in this District or transferred to this District by the Judicial Panel on Multidistrict Litigation. Unless otherwise ordered by the Court, all claims presented in any case against Apple or ATTM subsequently made a part of this multidistrict litigation proceeding shall be deemed to be included in this Complaint.

2.      This Complaint is filed solely as an administrative device to promote judicial efficiency and economy in the adjudication and resolution of pretrial matters and is not intended to effect consolidation for trial of the transferred cases.  Neither is this Complaint intended to change the rights of the parties, nor to make those who are plaintiffs in one case plaintiffs in another.  *See In re Propulsid Products Liability Litig.*, 208 F.R.D. 133, 140-41 (E.D. La. 2002).

3.      In this case, Plaintiffs challenge Defendants' actions in connection with their marketing, advertising and sale of the defective Apple iPhone 4 ("iPhone 4").

4.      Apple designed and manufactured, and both Apple and ATTM, acting in concert, marketed, advertised, and warranted the iPhone 4 to consumers nationwide.  In conjunction with each sale, Defendants marketed, advertised and warranted that each iPhone 4 was fit for the ordinary purpose for which such goods are used and was free from defects in materials and workmanship.

5.      Defendants knew or should have known that the iPhone 4 was defective in design and/or manufacture, was not fit for its ordinary and intended use, and did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants.  In addition, Defendants knew or should have known that the iPhone 4 does not conform with the reasonable expectations of ordinary consumers.

6.      Specifically, the iPhone 4 contains a defect that results in the reduction and/or elimination of cellular and wireless reception and performance when handling the phone as demonstrated in Defendants' own advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other iPhone 4 features.

7.      Defendants know that the iPhone 4 was defectively designed, but have attempted to minimize and distract Plaintiffs and putative class members from the fact that the iPhone 4 contains a defect not found in other similar phones.   Apple Chairman and Chief Executive Officer ("CEO"), Steve Jobs, (snidely) remarked, "Just avoid holding it in that way." At a press conference, Jobs and other Apple representatives attempted to confuse and conflate the specific design defect with the iPhone 4 with the normal signal attenuation suffered by all phones when held in normal use, and Apple, despite having announced and provided to consumers free of charge until November 30, 2010 rubber "bumpers" or cases, continues to deny that any specific design defect exists in the iPhone 4 which can be ameliorated with the use of such bumper or case.   In fact, Apple took great pains to refer to its free bumper/case giveaway simply as a customer appeasement gesture and not as a method to ameliorate the defect.

8.      The bumper given away by Apple, or any other case purchased by Plaintiffs or class members, however, is still simply a "band-aid" fix for the defective product.   That is, the iPhone 4 remains  defective.

9.      Moreover, Apple has built its reputation on the aesthetic appeal of its products. Requiring consumers to utilize a case on their iPhone 4 in order to use the phone as a reasonable consumer obscures the iPhone 4's sleek glass and metal design, which Defendants heavily advertised as a reason to purchase the iPhone 4.

10.      As a result of the defect in the iPhone 4, Plaintiffs and the proposed class and subclasses have suffered damages, in that they purchased and/or own an iPhone 4 that they would not otherwise have bought and/or owned had they known of the existence of the defect, they have been, or will be, forced to purchase additional accessories in order to properly utilize

1   the iPhone 4, purchased and/or own an iPhone 4 that is not worth the price that they paid, and/or

2   have been forced to purchase an iPhone 4 containing the defect in order to be able to make

3   continued use of their prior investment in applications and games, which can only be used on

4   products running Apple's iOS, such as the iPhone 4.

5   **JURISDICTION AND VENUE**

6   11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C.

7   §1332(d), 18 U.S.C. §2707, and 47 U.S.C. §605.  This Court has supplemental jurisdiction over

8   Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

9   12.     Venue for coordinated pretrial proceedings is proper in this District pursuant to

10  transfer orders issued by the Judicial Panel on Multidistrict Litigation.  Venue in the districts in

11  which the underlying cases were originally filed was also proper, as set forth by Plaintiffs in their

12  respective original complaints.

13  **PARTIES**

14  **Defendants**

15  13.     Defendant Apple is a California corporation with its headquarters and principal

16  place of business in Cupertino, California.  Apple designs, manufactures and markets a range of

17  personal computers, mobile communication and media devices, and portable digital music

18  players.  Apple also sells a range of related software, services, peripherals, networking solutions,

19  and third-party digital content and applications.   Apple's products and services include

20  Macintosh computers, iPhone, iPad, iPod, Apple TV, Xserve, a portfolio of consumer and

21  professional software applications, the Mac OS X and iOS operating systems, third-party digital

22  content and applications through the iTunes Store, and a range of accessory, service and support

23  offerings.  Apple sells its products globally through its retail stores, online stores, and direct sales

24  force and third-party cellular network carriers, wholesalers, retailers, and value-added resellers.

25  As of September 25, 2010, the Company had opened a total of 317 retail stores, including 233

26  stores in the United States and 84 stores internationally.

27

28

14.     At all relevant times, Apple designed, manufactured, promoted, marketed, distributed, and/or sold the iPhone 4 throughout the United States.

15.     Defendant ATTM is a Delaware corporation with its headquarters in Dallas, Texas.   ATTM provides telecommunications services throughout the United States and the world.  ATTM offers services and products to consumers in the United States and services and products to businesses and other providers of telecommunications services worldwide.

16.     At all relevant times, ATTM, acting in concert with Apple, marketed, advertised, and distributed the iPhone 4 and, until February 10, 2011, is the exclusive provider of mobile telephone service to iPhone 4 users in the United States since the iPhone's first iteration.

17.     At all relevant times, both Apple and ATTM knew, or should have known, that the iPhone 4 contained the defect alleged herein prior to marketing, advertising, and distributing the iPhone 4 to Plaintiffs and the putative class, but failed to disclose and correct the defect, and, in fact, to this day, have failed to properly disclose and correct the defect.

18.     At all relevant times, each and every Defendant was acting as an agent and/or employee of the other Defendant and was acting within the course of the scope of said agency and/or employment and with the full knowledge and consent of the other Defendant.  Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the Defendants.

19.     Defendants Apple and ATTM are collectively referred to herein as "Defendants."

**Plaintiffs**

20.     Plaintiff Stacy Milrot ("Plaintiff Milrot"), is a resident of the State of Florida and purchased an iPhone 4.  Immediately after purchase, Plaintiff Milrot's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Milrot to use her iPhone 4 in the manner that Defendants advertised.

21.     Plaintiff Milrot relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.  Plaintiff Milrot received a phone that contained a defect, which caused such phone to suffer significant

signal degradation when held in the normal manner for making calls, texting, and accessing the internet.  Plaintiff Milrot lost money or property as a result of receiving a phone with such a defect when Defendants represented that the device contained no such defect.

22.     Plaintiff Milrot owned a previous version of the iPhone or other iOS device. Plaintiff Milrot has invested considerable monies in purchasing applications which can only be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Milrot was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone, thereby losing the money Plaintiff Milrot had already invested in iOS applications for her prior iPhone.

23.     Plaintiff Christopher DeRose ("Plaintiff DeRose"), is a resident of the State of Florida and purchased an iPhone 4.  Immediately after purchase, Plaintiff DeRose's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff DeRose to use her iPhone 4 in the manner that Defendants advertised.

24.     Plaintiff DeRose relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone. Plaintiff DeRose received a phone that contained a defect, which caused such phone to suffer significant signal degradation when held in the normal manner for making calls, texting, and accessing the internet.  Plaintiff DeRose lost money or property as a result of receiving a phone with such a defect when Defendants represented that the device contained no such defect.

25.     Plaintiff DeRose owned a previous version of the iPhone or other iOS device. Plaintiff DeRose has invested considerable monies in purchasing applications, which can only be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff DeRose was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone, thereby losing the money Plaintiff DeRose had already invested in iOS applications for his prior iPhone.

26.     Plaintiff Steve Tietze ("Plaintiff Tietze"), is a resident of the State of California and Purchased an iPhone 4 on June 24, 2010.  Immediately after purchase, Plaintiff Tietze's

1  iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Tietze to

2  use his iPhone 4 in the manner that Defendants advertised.

3      27.    Plaintiff Tietze relied upon the representations of Apple & ATTM that the iPhone

4  4 would perform, at the very least, in the manner expected of an ordinary mobile phone.  Plaintiff

5  Tietze received a phone that contained a defect, which caused such phone to suffer significant

6  signal degradation when held in the normal manner for making calls, texting, and accessing the

7  internet.  Plaintiff Tietze lost money or property as a result of receiving a phone with such a

8  defect when Defendants represented that the device contained no such defect.

9      28.    Plaintiff Tietze owned a previous version of the iPhone or other iOS device.

10  Plaintiff Tietze has invested considerable monies in purchasing applications which can only be

11  used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Tietze was,

12  thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

13  thereby losing the money Plaintiff Tietze had already invested in iOS applications for his prior

14  iPhone.

15      29.    Plaintiff Jeffrey Rodgers ("Plaintiff Rodgers"), is a resident of the State of

16  Pennsylvania and Purchased an iPhone 4 from Apple prior to June 24, 2010.  Immediately after

17  purchase, Plaintiff Rodgers's iPhone 4 provided poor reception, dropped calls and otherwise did

18  not allow Plaintiff Rodgers to use his iPhone 4 in the manner that Defendants advertised.

19      30.    Plaintiff Hung Michael Nguyen ("Plaintiff Nguyen"), is a resident of the State of

20  Texas and Purchased an iPhone on June 24, 2010.   Immediately after purchase, Plaintiff

21  Nguyen's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff

22  Nguyen to use his iPhone 4 in the manner that Defendants advertised.

23      31.    Plaintiff Nguyen relied upon the representations of Apple & ATTM that the

24  iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

25  Plaintiff Nguyen received a phone that contained a defect, which caused such phone to suffer

26  significant signal degradation when held in the normal manner for making calls, texting, and

27

28

1    accessing the internet.  Plaintiff Nguyen lost money or property as a result of receiving a phone

2    with such a defect when Defendants represented that the device contained no such defect.

3         32.    Plaintiff Nguyen owned a previous version of the iPhone or other iOS device.

4    Plaintiff Nguyen has invested considerable monies in purchasing applications, which can only be

5    used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Nguyen was,

6    thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

7    thereby losing the money Plaintiff Nguyen had already invested in iOS applications for his prior

8    iPhone.

9         33.    Plaintiff Anthony Cologna ("Plaintiff Cologna"), is a resident of the State of New

10   Jersey and purchased an iPhone 4.  Immediately after purchase, Plaintiff Cologna's iPhone 4

11   provided poor reception, dropped calls and otherwise did not allow Plaintiff Cologna to use his

12   iPhone 4 in the manner that Defendants advertised.

13        34.    Plaintiff Cologna relied upon the representations of Apple & ATTM that the

14   iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

15   Plaintiff Cologna received a phone that contained a defect, which caused such phone to suffer

16   significant signal degradation when held in the normal manner for making calls, texting, and

17   accessing the internet.  Plaintiff Cologna lost money or property as a result of receiving a phone

18   with such a defect when Defendants represented that the device contained no such defect.

19        35.    Plaintiff Cologna owned a previous version of the iPhone or other iOS device.

20   Plaintiff Cologna has invested considerable monies in purchasing applications, which can only

21   be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Cologna

22   was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

23   thereby losing the money Plaintiff Cologna had already invested in iOS applications for his prior

24   iPhone.

25        36.    Plaintiff Joy Bearden ("Plaintiff Bearden"), is a resident of the State of New

26   Jersey and purchased an iPhone 4.  Immediately after purchase, Plaintiff Bearden's iPhone 4

27

28

1   provided poor reception, dropped calls and otherwise did not allow Plaintiff Bearden to use her

2   iPhone 4 in the manner that Defendants advertised.

3       37.     Plaintiff Bearden relied upon the representations of Apple & ATTM that the

4   iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

5   Plaintiff Bearden received a phone that contained a defect, which caused such phone to suffer

6   significant signal degradation when held in the normal manner for making calls, texting, and

7   accessing the internet.  Plaintiff Bearden lost money or property as a result of receiving a phone

8   with such a defect when Defendants represented that the device contained no such defect.

9       38.     Plaintiff Bearden owned a previous version of the iPhone or other iOS device.

10  Plaintiff Bearden has invested considerable monies in purchasing applications, which can only

11  be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Bearden

12  was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

13  thereby losing the money Plaintiff Bearden had already invested in iOS applications for her prior

14  iPhone.

15      39.     Plaintiff David Popik ("Plaintiff Popik"), is a resident of the State of California

16  and purchased an iPhone 4.  Immediately after purchase, Plaintiff Popik's iPhone 4 provided

17  poor reception, dropped calls and otherwise did not allow Plaintiff Popik to use his iPhone 4 in

18  the manner that Defendants advertised.

19      40.     Plaintiff Popik relied upon the representations of Apple & ATTM that the iPhone

20  4 would perform, at the very least, in the manner expected of an ordinary mobile phone.  Plaintiff

21  Popik received a phone that contained a defect, which caused such phone to suffer significant

22  signal degradation when held in the normal manner for making calls, texting, and accessing the

23  internet.  Plaintiff Popik lost money or property as a result of receiving a phone with such a

24  defect when Defendants represented that the device contained no such defect.

25      41.     Plaintiff Popik owned a previous version of the iPhone or other iOS device.

26  Plaintiff Popik has invested considerable monies in purchasing applications, which can only be

27  used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Popik was,

28

1   thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

2   thereby losing the money Plaintiff Popik had already invested in iOS applications for his prior

3   iPhone.

4          42.     Plaintiff, Charles Fasano ("Plaintiff Fasano"), is a resident of the State of Hawaii

5   and purchased an iPhone 4.  Immediately after purchase, Plaintiff Fasano's iPhone 4 provided

6   poor reception, dropped calls and otherwise did not allow Plaintiff Fasano to use his iPhone 4 in

7   the manner that Defendants advertised.

8          43.     Plaintiff Fasano relied upon the representations of Apple & ATTM that the

9   iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

10   Plaintiff Fasano received a phone that contained a defect, which caused such phone to suffer

11   significant signal degradation when held in the normal manner for making calls, texting, and

12   accessing the internet.  Plaintiff Fasano lost money or property as a result of receiving a phone

13   with such a defect when Defendants represented that the device contained no such defect.

14          44.     Plaintiff Fasano owned a previous version of the iPhone or other iOS device.

15   Plaintiff Fasano has invested considerable monies in purchasing applications which can only be

16   used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Fasano was,

17   thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

18   thereby losing the money Plaintiff Fasano had already invested in iOS applications for his prior

19   iPhone.

20          45.     Plaintiff Greg Aguilera II ("Plaintiff Aguilera"), is a resident of the State of

21   California and purchased an iPhone 4.  Immediately after purchase, Plaintiff Aguilera's iPhone 4

22   provided poor reception, dropped calls and otherwise did not allow Plaintiff Aguilera to use his

23   iPhone 4 in the manner that Defendants advertised.  Moreover, Plaintiff Aguilera is left handed,

24   and the defects in the iPhone 4 are compounded when the device is held in the left hand.

25   Plaintiff Aguilera was forced to purchase a "bumper" from Apple for approximately $30.00.  The

26   bumper has failed to remedy the defect in Plaintiff Aguilera's iPhone 4.  Plaintiff Aguilera

27

28

1  attempted to return his iPhone 4, however an Apple representative informed him that his return

2  would be subject to a 15 percent restocking fee.

3        46.    Plaintiff Aguilera relied upon the representations of Apple & ATTM that the

4  iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

5  Plaintiff Aguilera received a phone that contained a defect, which caused such phone to suffer

6  significant signal degradation when held in the normal manner for making calls, texting, and

7  accessing the internet.  Plaintiff Aguilera lost money or property as a result of receiving a phone

8  with such a defect when Defendants represented that the device contained no such defect.

9        47.    Plaintiff Aguilera owned a previous version of the iPhone or other iOS device.

10  Plaintiff Aguilera has invested considerable monies in purchasing applications which can only be

11  used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Aguilera was,

12  thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

13  thereby losing the money Plaintiff Aguilera had already invested in iOS applications for his prior

14  iPhone.

15        48.    Plaintiff Dr. Thomas Gionis ("Plaintiff Gionis"), is a resident of the State of

16  California and is licensed as a physician in that state.  Plaintiff Gionis purchased an iPhone 4.

17  Immediately after purchase, Plaintiff Gionis' iPhone 4 provided poor reception, dropped calls

18  and otherwise did not allow Plaintiff Gionis to use his iPhone 4 in the manner that Defendants

19  advertised.

20        49.    Plaintiff Gionis relied upon the representations of Apple & ATTM that the iPhone

21  4 would perform, at the very least, in the manner expected of an ordinary mobile phone.  Plaintiff

22  Gionis received a phone that contained a defect, which caused such phone to suffer significant

23  signal degradation when held in the normal manner for making calls, texting, and accessing the

24  internet.  Plaintiff Gionis lost money or property as a result of receiving a phone with such a

25  defect when Defendants represented that the device contained no such defect.  As the Chief of

26  Emergency Medicine at a California hospital, Plaintiff Gionis must be in constant

27  communication with other doctors and medical personnel, and the decisions he makes are often

28

1   life and death.  Plaintiff Gionis is forced to carry two mobile phones because the iPhone 4, with

2   its propensity to drop calls, cannot be trusted.

3         50.   Plaintiff Gionis owned a previous version of the iPhone or other iOS device.

4   Plaintiff Gionis has invested considerable monies in purchasing applications which can only be

5   used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Gionis was,

6   thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

7   thereby losing the money Plaintiff Gionis had already invested in iOS applications for his prior

8   iPhone.

9         51.   Plaintiff Christopher Bensberg ("Plaintiff Bensberg"), is a resident of the State of

10  California and purchased an iPhone 4.  Immediately after purchase, Plaintiff Bensberg's iPhone

11  4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Bensberg to use

12  his iPhone 4 in the manner that Defendants advertised.

13        52.   Plaintiff Bensberg relied upon the representations of Apple & ATTM that the

14  iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

15  Plaintiff Bensberg received a phone that contained a defect, which caused such phone to suffer

16  significant signal degradation when held in the normal manner for making calls, texting, and

17  accessing the internet.  Plaintiff Bensberg lost money or property as a result of receiving a phone

18  with such a defect when Defendants represented that the device contained no such defect.

19        53.   Plaintiff Bensberg owned a previous version of the iPhone or other iOS device.

20  Plaintiff Bensberg has invested considerable monies in purchasing applications, which can only

21  be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Bensberg

22  was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

23  thereby losing the money Plaintiff Bensberg had already invested in iOS applications for his

24  prior iPhone.

25        54.   Plaintiff David C. Purdue ("Plaintiff Purdue"), is a resident of the State of

26  Tennessee and purchased an iPhone 4 from an AT&T store in Franklin, Tennessee, on or about

27  July 6, 2010.  Immediately after purchase, Plaintiff Purdue's iPhone 4 provided poor reception,

28

1  dropped calls and otherwise did not allow Plaintiff Purdue to use his iPhone 4 in the manner that

2  Defendants advertised.  Plaintiff Purdue attempted to return his iPhone 4, but an Apple

3  representative informed him that his return would be subject to a 15 percent restocking fee.

4         55.  Plaintiff Purdue relied upon the representations of Apple & ATTM that the

5  iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

6  Plaintiff Purdue received a phone that contained a defect, which caused such phone to suffer

7  significant signal degradation when held in the normal manner for making calls, texting, and

8  accessing the internet.  Plaintiff Purdue lost money or property as a result of receiving a phone

9  with such a defect when Defendants represented that the device contained no such defect.

10         56.  Plaintiff Michael James Goodglick ("Plaintiff Goodglick"), is a resident of the

11  State of California and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail

12  stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective

13  websites.  Immediately after purchase, Plaintiff Goodglick's iPhone 4 provided poor reception,

14  dropped calls and otherwise did not allow Plaintiff Goodglick to use his iPhone 4 in the manner

15  that Defendants advertised.

16         57.  Plaintiff Karen Young ("Plaintiff Young"), is a resident of the State of California

17  and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a

18  pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites.

19  Immediately after purchase, Plaintiff Young's iPhone 4 provided poor reception, dropped calls

20  and otherwise did not allow Plaintiff Young to use her iPhone 4 in the manner that Defendants

21  advertised.

22         58.  Plaintiff Joshua Gilson ("Plaintiff Gilson"), is a resident of the State of California

23  and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a

24  pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites.

25  Immediately after purchase, Plaintiff Gilson's iPhone 4 provided poor reception, dropped calls

26  and otherwise did not allow Plaintiff Gilson to use his iPhone 4 in the manner that Defendants

27  advertised.

28

59.     Plaintiff Brandon Ellison Reininger ("Plaintiff Reininger"), is a resident of the State of California and purchased an iPhone 4 in June 2010 from RadioShack.  Immediately after purchase, Plaintiff Reininger's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Reininger to use his iPhone 4 in the manner that Defendants advertised.

60.     Plaintiff Reininger relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone. Plaintiff Reininger received a phone that contained a defect, which caused such phone to suffer significant signal degradation when held in the normal manner for making calls, texting, and accessing the internet.  Plaintiff Reininger lost money or property as a result of receiving a phone with such a defect when Defendants represented that the device contained no such defect.

61.     Plaintiff Trevor Antunez ("Plaintiff Antunez"), is a resident of the State of California and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites. Immediately after purchase, Plaintiff Antunez's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Antunez to use his iPhone 4 in the manner that Defendants advertised.

62.     Plaintiff Jessica Lares ("Plaintiff Lares"), is a resident of the State of Texas and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites.  Immediately after purchase, Plaintiff Lares's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Lares to use her iPhone 4 in the manner that Defendants advertised.

63.     Plaintiff Jaywill Sands ("Plaintiff Sands"), is a resident of the State of California. Plaintiff Sands pre-ordered an iPhone 4 in June 2010 from Apple and received it on June 25, 2010.  Immediately after it was received, Plaintiff Sands' iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Sands to use his iPhone 4 in the manner that Defendants advertised.

64.     Plaintiff Sands relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone. Plaintiff Sands received a phone that contained a defect, which caused such phone to suffer significant signal degradation when held in the normal manner for making calls, texting, and accessing the internet. Plaintiff Sands is an Information Technology manager for a large corporation. Plaintiff Sands' duties require him to communicate with individuals across the country who all require immediate assistance. Plaintiff Sands lost money or property as a result of receiving a phone with such a defect when Defendants represented that the device contained no such defect.

65.     Plaintiff Sands owned a previous version of the iPhone or other iOS device. Plaintiff Sands has invested considerable monies in purchasing applications, which can only be used on iOS devices. In order to have a current generation mobile phone, Plaintiff Sands was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone, thereby losing the money Plaintiff Sands had already invested in iOS applications for his prior iPhone.

66.     Plaintiff Bryan Colver ("Plaintiff Colver"), is a resident of the State of New Jersey and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites. Immediately after purchase, Plaintiff Colver's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Colver to use his iPhone 4 in the manner that Defendants advertised.

67.     Plaintiff Jaclyn Badolato ("Plaintiff Badolato"), is a resident of the State of New York and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites. Immediately after purchase, Plaintiff Badolato's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Badolato to use her iPhone 4 in the manner that Defendants advertised.

68.     Plaintiff Badolato relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone. Plaintiff Badolato received a phone that contained a defect, which caused such phone to suffer significant signal degradation when held in the normal manner for making calls, texting, and accessing the internet.  Plaintiff Badolato lost money or property as a result of receiving a phone with such a defect when Defendants represented that the device contained no such defect.

69.     Plaintiff Badolato owned a previous version of the iPhone or other iOS device. Plaintiff Badolato has invested considerable monies in purchasing applications, which can only be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Badolato was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone, thereby losing the money Plaintiff Badolato had already invested in iOS applications for her prior iPhone.

70.     Plaintiff Nicole Stankovitz ("Plaintiff Stankovitz"), is a resident of the State of New Jersey and purchased an iPhone 4 in June 2010, either at Apple and AT&T's retail stores, or through a pre-order on or about June 15, 2010 through Apple's or AT&T's respective websites.  Immediately after purchase, Plaintiff Stankovitz's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Stankovitz to use his iPhone 4 in the manner that Defendants advertised.

71.     Plaintiff Vinny Curbelo ("Plaintiff Curbelo"), is a resident of the State of New Jersey and purchased an iPhone 4 on June 24, 2010, from an Apple retail store.  Immediately after purchase, Plaintiff Curbelo's iPhone 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff Curbelo to use his iPhone 4 in the manner that Defendants advertised.  In an unsuccessful attempt to remedy his iPhone 4's poor reception, Plaintiff Curbelo purchased seven phone cases.

72.     Plaintiff Curbelo relied upon the representations of Apple & ATTM that the iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone. Plaintiff Curbelo received a phone that contained a defect, which caused such phone to suffer

1  significant signal degradation when held in the normal manner for making calls, texting, and

2  accessing the internet.  Plaintiff Curbelo lost money or property as a result of receiving a phone

3  with such a defect when Defendants represented that the device contained no such defect.

4          73.     Plaintiff Curbelo owned a previous version of the iPhone or other iOS device.

5  Plaintiff Curbelo has invested considerable monies in purchasing applications, which can only be

6  used on iOS devices.  In order to have a current generation mobile phone, Plaintiff Curbelo was,

7  thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

8  thereby losing the money Plaintiff Curbelo had already invested in iOS applications for his prior

9  iPhone.

10         74.     Plaintiff Kevin McCaffrey ("Plaintiff McCaffrey"), is a resident of the State of

11 Maryland and purchased an iPhone 4.  Immediately after purchase, Plaintiff McCaffrey's iPhone

12 4 provided poor reception, dropped calls and otherwise did not allow Plaintiff McCaffrey to use

13 his iPhone 4 in the manner that Defendants advertised.

14         75.     Plaintiff McCaffrey relied upon the representations of Apple & ATTM that the

15 iPhone 4 would perform, at the very least, in the manner expected of an ordinary mobile phone.

16 Plaintiff McCaffrey received a phone that contained a defect, which caused such phone to suffer

17 significant signal degradation when held in the normal manner for making calls, texting, and

18 accessing the internet.  Plaintiff McCaffrey lost money or property as a result of receiving a

19 phone with such a defect when Defendants represented that the device contained no such defect.

20         76.     Plaintiff McCaffrey owned a previous version of the iPhone or other iOS device.

21 Plaintiff McCaffrey has invested considerable monies in purchasing applications, which can only

22 be used on iOS devices.  In order to have a current generation mobile phone, Plaintiff McCaffrey

23 was, thus, forced to either purchase a defective iPhone 4, or purchase a non-iOS mobile phone,

24 thereby losing the money Plaintiff McCaffrey had already invested in iOS applications for his

25 prior iPhone.

26

27

28

1

**CLASS ACTION ALLEGATIONS**

2    77.    Plaintiffs bring this action as a class action, pursuant to Federal Rules of Civil

3    Procedure 23(a), 23(b)(2) and 23(b)(3), on behalf of themselves and all others similarly situated

4    as members of the following class (the "Class"): all persons who purchased an iPhone 4 in the

5    United States between June 24, 2010 and the present.

6    78.    In the alternative to a national class, Plaintiffs seek certification of the following

7    Subclasses.

8    79.    Plaintiffs Tietze, Bensberg, Popik, Aguilera, Gionis, Goodglick, Young, Gilson,

9    Reininger, Antunez, and Sands, (the "California Plaintiffs") also bring, this action, pursuant to

10   Rule 23, on behalf of all persons who are citizens or residents of the State of California and

11   purchased an iPhone 4 between June 24, 2010 and the present (the "California Subclass").

12   80.    Plaintiffs Milrot and DeRose (the "Florida Plaintiffs") also bring, this action,

13   pursuant to Rule 23, on behalf of all persons who are citizens or residents of the state of Florida

14   and purchased an iPhone 4 between June 24, 2010 and the present (the "Florida Subclass").

15   81.    Plaintiff Rodgers also brings, this action, pursuant to Rule 23, on behalf of all

16   persons who are citizens or residents of the State of Pennsylvania and purchased an iPhone 4

17   between June 24, 2010 and the present (the "Pennsylvania Subclass").

18   82.    Plaintiffs Cologna, Bearden, Colver, Curbelo, and Stankovitz (the "New Jersey

19   Plaintiffs") also bring, this action, pursuant to Rule 23, on behalf of all persons who are citizens

20   or residents of the State of New Jersey and purchased an iPhone 4 between June 24, 2010 and the

21   present (the "New Jersey Subclass").

22   83.    Plaintiffs Nguyen and Lares (the "Texas Plaintiffs") also bring, this action,

23   pursuant to Rule 23, on behalf of all persons who are citizens or residents of the State of Texas

24   and purchased an iPhone 4 between June 24, 2010 and the present (the "Texas Subclass").

25   84.    Plaintiff Purdue also brings, this action, pursuant to Rule 23, on behalf of all

26   persons who are citizens or residents of the State of Tennessee and purchased an iPhone 4

27   between June 24, 2010 and the present (the "Tennessee Subclass").

28

85.     Plaintiff Badolato also brings, this action, pursuant to Rule 23, on behalf of all persons who are citizens or residents of the State of New York and purchased an iPhone 4 between June 24, 2010 and the present (the "New York Subclass").

86.     Plaintiff McCaffrey also brings, this action, pursuant to Rule 23, on behalf of all persons who are citizens or residents of the State of Maryland and purchased an iPhone 4 between June 24, 2010 and the present (the "Maryland Subclass").

87.     Plaintiff Fasano also brings, this action, pursuant to Rule 23, on behalf of all persons who are citizens or residents of the State of Hawaii and purchased an iPhone 4 between June 24, 2010 and the present (the "Hawaii Subclass").

88.     The Subclasses described in paragraphs 79 to 87 are collectively referred to herein as the "Subclasses."

89.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions may be expanded or narrowed by amendment or amended complaint.

90.     Specifically excluded from the Class and Subclass are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

91.     **Numerosity**. The members of the Class and Subclasses are so numerous that joinder of all members is impracticable.  Upon information and belief, Plaintiffs allege that the proposed Class and Subclasses currently contains well over two million members.

92.     The exact number of Class and Subclass members is unknown to Plaintiffs at the present time.   The true number of Class and Subclass members are known or readily ascertainable by Apple and ATTM, however, and thus, Class and Subclass members may be

1  notified of the pendency of this action by first class mail, electronic mail, notification through

2  iTunes, and/or published notice.

3      93.  **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class

4  and Subclasses.  Plaintiffs and all members of the Class and Subclasses purchased iPhone 4's

5  and have sustained damages arising out of the same wrongful course of conduct.  Plaintiffs

6  purchased the iPhone 4 based in substantial part on the uniformly advertised claim that the

7  iPhone 4 had the characteristics of increased reception and data transfer speeds and, in general,

8  greater performance than the phone actually provides.

9      94.  **Predominance of Common Questions of Law and Fact**. Common questions of

10  law and fact exist as to all members of the Class and Subclasses and predominate over any

11  questions solely affecting individual members.  Among the questions of law and fact common to

12  the Class and Subclasses are:

13          (a)  Whether Defendants advertised and sold the iPhone 4 by promoting the

14  product's speed and performance, when in fact, the actual performance was materially different,

15  and worse, than promised;

16          (b)  Whether the iPhone 4 was defective;

17          (c)  Whether Defendants were negligent in the design, manufacturing, and

18  distribution of the iPhone 4;

19          (d)  Whether Defendants representations amounted to an express warranty;

20          (e)  Whether Defendants breached the warranty;

21          (f)  Whether Defendants breached the implied warranty of merchantability;

22          (g)  Whether Defendants breached the implied warranty of fitness for a

23  particular purpose;

24          (h)  Whether Defendants intentionally and/or negligently misrepresented

25  material facts relating to the character and quality of the iPhone 4;

26          (i)  Whether Defendants failed to disclose material facts about limitations in

27  the speed and performance characteristics of the iPhone 4 to consumers;

28

1        (j)     Whether Defendants forced Class and Subclass members to pay unjust

2  charges for the goods and services they were sold by Defendants, as well as whether that failure

3  violates statutory and common law prohibitions against such conduct, as detailed herein;

4        (k)     Whether Defendants violated the Federal Communications Act; and

5        (l)     Whether Defendants violated state consumer protection laws as detailed

6  herein.

7        95.    **Superiority**. A class action is superior to other available methods for the fair and

8  efficient adjudication of this controversy since, among other things, joinder of all members of the

9  Class is impracticable.  Furthermore, as the damages suffered by many individual Class members

10  may be relatively small, the expense and burden of individual litigation make it virtually

11  impossible for Class members to individually seek redress for Defendants' wrongful conduct

12  alleged herein.  Plaintiffs do not foresee any difficulty in the management of this litigation that

13  would preclude its maintenance as a class action.

14        96.    The prosecution of separate actions by individual members of the Class would

15  create a risk of inconsistent or varying adjudication, establishing incompatible standards of

16  conduct for Defendants.

17        97.    **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and

18  protect the interests of the members of the Class and Subclasses.  Plaintiffs have retained counsel

19  highly experienced in complex consumer class action litigation and intend to vigorously

20  prosecute this action.  Plaintiffs are members of the Class and Subclasses and do not have

21  interests antagonistic to, or in conflict with, the other members of the Class.

22        98.    The claims asserted herein are applicable to all individuals throughout the United

23  States who purchased the iPhone 4.  The State of California has sufficient state interest through a

24  significant contact or aggregation of contacts to the claims asserted by each member of the Class

25  and Subclasses so that the choice of California law is not arbitrary or unfair.

26        99.    Certification of the Class under the laws of California is appropriate because:

27

28

      (a)     Apple is a corporation conducting substantial business in and from California;

      (b)     Apple's principle place of business and corporate headquarters are located in California;

      (c)     Decisions regarding Apple and ATTM's representations and omissions regarding the iPhone 4 were made in California;

      (d)     Apple and ATTM's marketing, promotional activities and literature, as well as their warranties, were coordinated at, emanated from and/or were developed at Apple's California headquarters; and

      (e)     A significant number of Class members reside in the State of California.

100.    However, in the event that California substantive law is found not to apply to Plaintiffs' claims, Plaintiffs seek certification, in the alternative, of the Subclasses.

101.    The Class may be certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

102.    The Class may also be certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class members will predominate over individual questions effecting individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy and causes of action described herein.

103.    Damages may be calculated from the sales information maintained in Defendants' records, so that the costs of administering a recovery for the Class can be minimized.  The amount of damages can be ascertained with precision from Defendants' records and/or through expert opinion testimony.

1

**FACTUAL ALLEGATIONS**

2   104.   Apple manufactures, designs, produces and sells several types of electronic

3   products, including, among others, personal computers, portable music players, cellular phones,

4   and other communication devices.   Among these products is the well-known iPhone, which

5   launched in 2007.

6   105.   Between August and December 2009, Apple began to design the highly

7   anticipated iPhone 4.

8   106.   On June 7, 2010, at Apple's Worldwide Developers Conference ("WWDC"),

9   Apple officially announced the release date of the iPhone 4: June 24, 2010.

10   107.   At the WWDC, Steve Jobs, Apple's Chairman and CEO, boasted about the new

11   engineering miracle that was the iPhone 4's new antenna design, which placed the antenna

12   around the outside of the device.   Jobs stated, among other things, that the iPhone 4 is "the most

13   precise thing we have ever made" and its "brilliant design" has "integrated antennas right in the

14   structure of the phone, it's never been done before and it's really cool engineering."   The iPhone

15   4's antenna design is pictured in this photo of Jobs giving his presentation at the WWDC:

16



17

18

19

20

21

22

23

24

25

26

27

28

108.    On June 24, 2010, Apple released the iPhone 4, selling over 1.7 million units within three days of its launch.  Jobs characterized the iPhone 4's release as "the most successful product launch in Apple's history."

109.    In connection with the release of the iPhone 4, Defendants engaged in a lengthy and extensive global advertising campaign to market the iPhone 4.

110.    As part of that advertising and marketing campaign, Defendants made multiple claims and representations that the new iPhone 4 would have improved reception and provide improved service to consumers.

111.    In many of Defendants' text and video advertisements, including images and videos that were displayed during the WWDC, individuals are shown experiencing strong reception and positive performance while holding the iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, thus making contact with the iPhone 4's antennas.

112.    Nevertheless, immediately after receiving their iPhone 4s, Plaintiffs, like many other purchasers, began to experience significantly reduced wireless reception and performance when handling the iPhone 4 as demonstrated in Apple's advertisements, or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other iPhone 4 features.  This issue has come to be known as the "Death Grip."

113.    Indeed, on June 24, 2010, the same day that the iPhone 4 launched, Gizmodo.com posted a reader-submitted video wherein the reader demonstrated his discovery of the Death Grip defect in his new iPhone 4.  In the video, the reader is seen holding his iPhone 4 in his hands, touching the phone's outside antenna band in two places.  When holding his iPhone 4 in this manner, the iPhone 4's wireless signal dropped significantly.  The video then showed the reader placing his iPhone 4 down on a flat surface, whereby the wireless signal was restored.

114.    After Gizmodo.com posted this story, entitled "iPhone 4 Loses Reception When You Hold It By The Antenna Band?",[1] Gizmodo.com encouraged other readers to conduct similar experiments on their iPhone 4's, and to submit videos of those tests, in order to confirm or dismiss the original reader's findings.

115.    Almost immediately, approximately 30 readers posted video clips of their own iPhone 4 tests, wherein all but one user was able to consistently reproduce the reduction in wireless signal and/or complete loss in wireless signal when the phone was held so that the user's hand was in contact with the lower left corner of the iPhone 4, which is the manner in which a reasonable person would hold the iPhone 4 or any telephonic device.

116.    Readers hypothesized that the Death Grip effect was caused by a "bridging" of the iPhone 4's two separate antennas – to receive a cellular signal and wireless internet signal, respectively – when a user's hand contacted the lower left corner of the device, thereby reducing or completely eliminating the wireless signal.

117.    Accordingly, some Gizmodo.com readers reported that the Death Grip defect could be alleviated through several self-fixes, such as placing scotch tape or clear nail polish over the problem area of the antenna, or by using a case.  These remedies prevent the users hand from directly contacting the two points on the iPhone 4's antenna, causing them to bridge.

118.    Hours later, PCMag.com posted an article entitled "Apple iPhone 4 Antenna Problems Confirmed via Tests,"[2] wherein PCMag.com editors were able to replicate the reduction or elimination of the iPhone 4's wireless reception that consumers were experiencing and confirm that "the iPhone 4 'death grip' is definitely real."

119.    Apple initially denied the existence of the Death Grip defect, dismissing it as a "non issue" and instructed consumers to either (1) "avoid holding it that way" or (2) "use one of many available cases."

---

[1]    *Available at* http://gizmodo.com/5571171/iphone-4-loses-reception-when-you-hold-it-by-the-antenna-band (last visited Jan. 27, 2010).

[2]    *Available at* http://www.pcmag.com/article2/0,2817,2365650,00.asp (last visited Jan. 27, 2011).

120.     Despite Jobs' public denials, on June 29, 2010, Boy Genius Report, a Technology Blog/Website ("Boy Genius"), reported that AppleCare representatives were purportedly provided instructions by Defendant Apple on how to address callers complaining about iPhone 4 reception issues.[3]

121.     Boy Genius reported that Apple had instructed its representatives to inform iPhone 4 owners that "The iPhone 4's wireless performance is the best we have ever shipped." And that "If you are experiencing [reduced reception] on your iPhone 4, avoid covering the black strip on the lower-left corner of the metal band."

122.     Further, Boy Genius reported that "The use of a case or Bumper that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering these areas."

123.     Despite Apple's apparent belief that the use of a case may remedy the inherent flaw in the iPhone 4 device, Boy Genius further reported, based on internal Apple communications, that  "WE [APPLE] ARE NOT appeasing customers with free bumpers — DON'T promise a free bumper to customers."

124.     In addition, Boy Genius reported that, should an iPhone 4 customer complain about reception problems, Apple representatives are to specifically respond that "it is not the metal band."

125.     Shockingly, also according to Boy Genius, Apple instructed its employees that they were not to perform warranty service on the reception problems, telling them, "Do not perform warranty service."

126.     The actual AppleCare "talking points" discussed in the Boy Genius Report are demonstrated here:

---

[3]       *Available at* http://www.bgr.com/2010/06/29/leaked-apples-internal-iphone-4-antenna-troubleshooting-procedures/ (last visited Jan. 28, 2011).

1. Keep all of the positioning statements in the BN handy – your tone when delivering this information is important.

    a. The iPhone 4's wireless performance is the best we have ever shipped. Our testing shows that iPhone 4's overall antenna performance is better than iPhone 3GS.

    b. Gripping almost any mobile phone in certain places will reduce its reception. This is true of the iPhone 4, the iPhone 3GS, and many other phones we have tested. It is a fact of life in the wireless world.

    c. If you are experiencing this on your iPhone 3GS, avoid covering the bottom-right side with your hand.

    d. If you are experiencing this on your iPhone 4, avoid covering the black strip in the lower-left corner of the metal band.

    e. The use of a case or Bumper that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering these areas.

2. Do not perform warranty service. Use the positioning above for any customer questions or concerns.

3. Don't forget **YOU STILL NEED to probe** and troubleshoot. If a customer calls about their reception while the phone is sitting on a table (not being held) it is not the metal band.

4. ONLY escalate if the issue exists when the phone is not held AND you cannot resolve it.

5. We **ARE NOT** appeasing customers with free bumpers – DON'T promise a free bumper to customers.

127.    On June 30, 2010, AnandTech, Inc. ("AnandTech") published a story entitled, "The Real Story on iPhone 4's Antenna." [4]  AnandTech reported, *inter alia*, the following:

    (a)    as with all external antennas, the potential for both unintended attenuation and detuning is much, much greater;

    (b)    anything conductive which bridges the gap in the bottom left [of the iPhone 4] couples the antennas together, detuning the precisely engineered antennas.  It's a problem of impedance matching with the body as an antenna, and the additional antenna that becomes part of the equation when you touch the bottom left;

    (c)    The fact of the matter is that cupping the bottom left corner and making skin contact between the two antennas does result in a measurable difference in cellular reception;

    (d)    Holding the iPhone 4 without a case, in your left hand, crossing the black strip can result in a worst case drop of 24 dB in signal;

---

[4]    *Available at* http://www.anandtech.com/show/3794/the-iphone-4-review/2 (last viewed Jan. 28, 2011).

(e)     Add in an external antenna you're essentially forced to touch and bridge to another adjacent antenna while holding, and the signal attenuation is even worse.  The fact of the matter is that either the most sensitive region of the antenna should have an insulative coating, or everyone should use a case.  For a company that uses style heavily as a selling point, the latter isn't an option.  And the former would require an unprecedented admission of fault on Apple's part; and

(f)     The drop in signal from holding the phone with your left hand arguably remains a problem.  Changing the bars visualization may indeed help mask it, and to be fair the phone works fine all the way down to -113 dBm, but it will persist – software updates can change physics as much as they can change hardware design.  At the end of the day, Apple should add an insulative coating to the stainless steel band, or subsidize bumper cases.  It's that simple.

128.    These issues are, without question, the result of the iPhone 4's defective design and/or manufacture.

129.    Indeed, it appears clear that both Defendants had actual or constructive knowledge of the iPhone 4's design and/or manufacturing defects prior to its distribution.  This is evident by the fact that the "bumper" sold by Defendants to reduce the reception problems on the iPhone (ironically, Apple's first attempt at manufacturing its own mobile phone case) were made available – for $29[5] – nearly immediately after the iPhone 4 launch.  The "bumper" is shown in following picture:

---

[5]     *Available at* http://store.apple.com/us/product/APPLE_IPHONE_BUMPERS-104238?mco=MTgxNTgyMDY  (last visited Jan. 25, 2011).



130.   On July 2, 2010, Apple addressed a completely different issue that consumers, including Plaintiffs, the Class and Subclasses were experiencing.  In an official press release, Apple blamed the issue on a miscalculation in the formula that the iPhone 4 utilizes in order to calculate the number of bars of signal strength to display.  Essentially, Apple contended that the issue was such: while a consumer's iPhone may display a full signal strength, by virtue of the erroneous internal calculation, the iPhone 4's actual signal strength was much weaker than that displayed.  Thus, rather than admitting and fixing the hardware design problem, Apple blamed it on a software issue and a matter of "perception."

131.   Apple promised consumers that a software update intended to correct the signal strength calculation error would be released in the coming weeks.  However, Apple made no acknowledgement that the hardware defect experienced by Plaintiffs and class members existed.

132.   On July 12, the not-for-profit consumer watchdog, Consumer Reports, conducted its own study of the iPhone 4, stating: "it's official. Consumer Reports' engineers have just completed testing the iPhone 4, and have confirmed that there is a problem with its reception."[6]

---

[6]      *Available at* http://blogs.consumerreports.org/electronics/2010/07/apple-iphone-4-antenna-issue-iphone4-problems-dropped-calls-lab-test-confirmed-problem-issues-signal-strength-att-network-gsm.html (last visited Jan. 27, 2011).

For this reason, Consumer Reports refused to recommend the iPhone 4 to consumers, despite it having received favorable reviews in all other aspects.  Consumer Reports did make the following recommendation, however: "If you want an iPhone that works well without a masking-tape fix, we continue to recommend an older model, the 3GS."

133.    News of Consumer Reports' test results were immediately posted on Apple's official internet discussion boards.  However, according to Appleinsider.com,[7] Apple quickly deleted at least six subject threads regarding Consumer Reports' findings.

134.    In that story, TJ Luoma, a writer for "The Unofficial Apple Weblog,"[8] said the following:

> this isn't the first time we've heard about Apple deleting discussion board threads on topics which are unflattering to Apple's products. It's closer to the fiftieth time.  In fact, we've heard so many reports about this happening that it seems safe to call this standard operating procedure for Apple's discussion boards. That's not to say that there are no negative threads on the discussion boards, but the ones that are there are the ones that Apple's moderators have decided to leave active.

135.    Apple's shocking conduct in connection with the defects in the iPhone 4 was made more apparent on July 15 when Bloomberg News released a story entitled, "Apple Engineer Told Jobs iPhone Antenna Might Cut Calls."[9]  In that story, the authors reported that in the early design phase of the iPhone 4, Apple's senior antenna expert voiced concern to Jobs that the antenna design could lead to dropped calls.  Further, the authors reported that in the year prior, a senior engineer and antenna expert by the name of Ruben Caballero informed Apple's management that the iPhone 4's antenna design may hurt reception.

136.    The Death Grip issue affected so many American consumers that Democratic New York Senator Charles Schumer issued an open letter to Steve Jobs on July 15, 2010, asking

---

[7]    *See* http://www.appleinsider.com/articles/10/07/12/apple_deletes_discussion_threads_about_consumer_reports_and_iphone_4.html (last visited Jan. 28, 2011).

[8]    *See* http://www.tuaw.com/ (last visited Jan. 28, 2011).

[9]    *Available at* http://www.bloomberg.com/news/2010-07-15/apple-engineer-said-to-have-told-jobs-last-year-about-iphone-antenna-flaw.html (last visited Jan. 28, 2011).

Apple to provide a free iPhone 4 fix for consumers.[10]   In that letter, Senator Schumer characterized Apple's solutions thus far, including the forthcoming software fix that would purportedly remedy the issue, as insufficient.  Senator Schumer also said that Apple's suggestion to buy a case was not adequate, stating that:

> The burden for consumers caused by this glitch, combined with the confusion over its cause and how it will be fixed, has the potential to undermine the many benefits of this innovative device.  To address this concern, I ask that Apple provide iPhone 4 customers with a clearly written explanation of the cause of the reception problem and make a public commitment to remedy it free-of-charge.

137.   On July 15, 2010, Apple released the promised software update for the iPhone 4 – OS 4.0.1 – which Jobs contended would remedy the defect in the iPhone 4 by modifying the formula that the phone utilizes to calculate its displayed signal strength.

138.   Despite the release of OS 4.0.1, consumers, including Plaintiffs, the Class and Subclasses continued to experience the Death Grip effects of a reduced and/or eliminated wireless signal.  That is, nothing changed but the size and calculation of the signal strength bars on the phone.

139.   On July 16, Apple held a press conference where Jobs spent the first part of his presentation playing down the controversy, characterizing it as being "blown way out of proportion," and denying that the iPhone 4's attenuation issues were worse than those of any other smartphone.  Despite Jobs' denial of the issue, Apple implemented a "Free Bumper Program" pursuant to which Apple offered all iPhone 4 customers a free case through September 30, 2010, at which point Apple would reevaluate the situation.[11]

140.   Aside from the fact that in order to use the iPhone 4 as a reasonable consumer would, consumers would have to use a case, thereby obscuring the iPhone 4's aesthetic appeal, including its sleek glass and metal design, that Defendants heavily advertised and which draws

---

[10]      *See* http://www.appleinsider.com/articles/10/07/15/us_sen_schumer_writes_letter_to_ apple_ceo_over_iphone_4_antenna.html (last visited Jan. 28, 2011).

[11]      *See* http://www.apple.com/apple-events/july-2010/ (last visited Jan. 28, 2011).

1    consumers to the Apple brand, many consumers, including Plaintiff, the Class and Subclasses

2    have experienced an additional issue in connection with the use of a case to remedy the iPhone

3    4's defect – in some instance, removing a case results in damage to the glass face and back of the

4    iPhone 4.

5        141.    Moreover, Apple's now discontinued Bumper Program was simply a band-aid

6    "fix" to mask the defective design of the iPhone 4's antenna.  Indeed, in a July 16, 2011 story

7    entitled "Bumper and all, Consumer Reports still doesn't recommend iPhone 4,"[12] CNN.com

8    reported Consumer Reports' dissatisfaction with Apple's "solution."  In that story, Mike Gikas,

9    senior editor for electronics and technology at Consumer Reports said: "such a patch is a good

10   'first step,' [b]ut it's still not enough for [Consumer Reports] to recommend the phone to

11   consumers. . . . What we were hoping for was a concrete, this-is-it fix for the phone."

12       142.    Also on July 16, 2010, because Jobs did not specify a time line for fixing the

13   problem, and the free bumper being only a temporary solution, PCWorld.com removed the

14   iPhone 4 from its "Top 10 Cell Phones" chart and reassigned it to a pending rating,[13] stating:

15   "While offering users a free bumper is a step in the right direction, it does not excuse the faulty

16   hardware."

17       143.    At the July 16, 2010 press conference, Apple also offered to waive the restocking

18   fee for any customer who wished to return the iPhone 4.  However, consumers who have

19   invested in the purchase of applications ("apps"), music and videos from Apple's iTunes Store

20   did not receive refunds for these purchases, **which can only be used with Apple products**.

21       144.    Likewise, Plaintiffs, the Class and Subclasses are currently in a position where

22   they cannot return their defective iPhone 4 in exchange for an older model iPhone, such as the

23

24

---

25   [12]      *Available at* http://www.cnn.com/2010/TECH/mobile/07/16/consumer.reports.iphone.
     case

26   [13]      *See* http://www.pcworld.com/article/201320/iphone_4_why_weve_reconsidered_its_
27   rating.html (last visited Jan. 28, 2011).

28

3GS, without losing the money that they invested in certain apps that are only compatible with the newer iPhone 4.

145.    As a direct and proximate result of the iPhone 4's design and/or manufacturing defects, Plaintiffs, the Class and Subclasses have been unable to reliably use their iPhone 4 devices for their intended purpose, and the device has not conformed to their expectations.

146.    ATTM, as the exclusive provider of mobile telephone service to iPhone 4 owners in the United States until February 10, 2011, continues to market and sell the device and provide exclusive mobile telephone service to iPhone 4 users, despite knowing that the iPhone 4 is defective.

147.    On January 11, 2011, Apple announced that it will release an updated version of the iPhone 4 (the "Verizon iPhone 4") that, for the first time, would operate on a carrier other than AT&T – Verizon Wireless.  The Verizon iPhone 4 is scheduled to be released on February 10, 2011.

148.    The design of the Verizon iPhone 4 is identical to the iPhone 4 in all respects except that it features a modified antenna design that may be intended to remedy the "Death Grip" issue:[14]



---

[14]    *Available at* http://gizmodo.com/5730642/the-verizon-iphones-got-a-new-antenna (last visited Jan. 25, 2011).

149.    On January 11, 2011, Gizmodo.com reported readers' experiences conducting the Death Grip test on demonstration units of the Verizon iPhone 4.[15]  Thus far, three readers' have reported that they have been unable to recreate the Death Grip effect on the demonstration units of the Verizon iPhone 4.   Specifically, readers reported that they were unable to cause a reduction in the Verizon iPhone 4's wireless signal despite intentionally placing their hands over the lower left corner of the antenna, or on anywhere else on the device.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Products Liability – Negligence

150.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

151.    Defendants, in designing, manufacturing, marketing, and distributing the iPhone 4 had a duty to Plaintiffs and the Class to do so in a reasonable manner and to ensure that the product was without defect.

152.    Defendants breached this duty when they placed the defective iPhone 4 into the stream of commerce either with knowledge, or negligently unaware, of its defective nature.

153.    As a direct and proximate result of Defendants' negligence, the defective iPhone 4 has caused economic injury to Plaintiffs and the Class.

### SECOND CAUSE OF ACTION
### Products Liability – Defect in Design, Manufacture, and Assembly

154.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

155.    The iPhone 4 was not reasonably fit, suitable, or safe for its intended use by reason of a defect in its design, manufacture, or assembly, which caused it to not function properly as a cellular communication device.

---

[15]     *Available at* http://gizmodo.com/5730642/the-verizon-iphones-got-a-new-antenna

156.     The defect in design, manufacture, or assembly existed at the time Defendants placed the iPhone 4 into the stream of commerce.

157.     The iPhone 4 was used in its intended and reasonably foreseeable manner when it failed to function properly and caused economic damage and harm to Plaintiffs and the Class.

158.     As a direct and proximate result thereof, Plaintiffs and the Class have been injured and damaged.

**THIRD CAUSE OF ACTION**
**Breach of Express and Implied Warranty**

159.     Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

160.     Plaintiffs and the Class purchased their iPhone 4s and used them for their ordinary and intended purpose of providing consistent, reliable and sustained access to the AT&T Wireless network, and entered into agreements with Defendants, or their agents, and received uniform warranties in connection with the purchase of their iPhone 4s.

161.     The iPhone 4 cannot perform its ordinary and represented purpose because the iPhone 4 does not provide consistent connection to the AT&T wireless network during ordinary use of the iPhone 4.

162.     When Defendants placed the iPhone 4 into the stream of commerce, they knew, reasonably should have known, or were obligated to understand that the intended and ordinary purpose of the iPhone 4 was to provide consistent connectivity to AT&T's wireless network and that users would expect regular connectivity and materially faster data transfer rates than other devices, including previous iPhone models, during ordinary use of the iPhone 4.

163.     Plaintiffs and the Class purchased their iPhone 4s with the reasonable expectation that they would receive reliable and sustained connectivity to AT&T's network.   The advertisements Defendants disseminated that stressed the excellence and reliability of the iPhone 4, and its new antenna design, constitute an express warranty that the iPhone 4 would operate as advertised during their useful life, upon which Plaintiffs and the Class reasonably relied.

164.   In reality, the iPhone 4 is not fit for its warranted, advertised, ordinary and intended purpose of providing reliable network connectivity and is in fact defective, or would not pass without objection in the trade or industry in terms of being unable to provide consistent and reliable network connectivity through ordinary use.  This defect has manifested for all Plaintiffs and the Class members as they do not consistently receive network connectivity using their iPhone 4s.

165.   Plaintiffs and the Class were injured and are entitled to damages as a result of such breaches.

### FOURTH CAUSE OF ACTION
### Intentional Misrepresentation

166.   Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

167.   At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, or selling the iPhone 4.

168.   Defendants, acting through their officers, agents, servants, representatives, or employees, delivered the iPhone 4 units to their own retail stores, distributors, and various other distribution channels.

169.   Defendants willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the iPhone 4. These misrepresentations are contained in various media advertising and packaging disseminated or caused to be disseminated by Defendants, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Defendants, acting within the line and scope of their authority, so employed by Defendants to merchandise and market the iPhone 4.  Specifically, the iPhone 4's promotional literature showed the iPhone 4 being used and held in a manner which actually causes the units to lose data and voice connectivity, and Defendants promoted the new antenna design of the iPhone 4 as improving reception performance.

170.    Defendants' representations were made with the intent that the general public, including Plaintiff and the Class, rely upon them.  Defendants' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

171.    In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiffs and the Class purchased and used the iPhone 4 units for their intended and reasonably foreseeable purposes: i.e., as a smartphone.  Plaintiffs and the Class were unaware of the existence of facts that Defendants suppressed and failed to disclose.  If Plaintiffs and the Class had been aware of these suppressed facts, Plaintiffs and the Class would not have purchased the defective iPhone 4 at the price and contractual terms at which they were sold by Defendants.

172.    Upon information and belief, Plaintiffs and the Class allege, that Defendants misrepresented material facts with the intent to defraud Plaintiffs and the Class.  Plaintiffs and the Class were unaware of Defendants' intent and relied upon Defendants' representations in agreeing to purchase their iPhone 4s.

173.    Plaintiffs and the Class' reliance on Defendants' representations was reasonable.

174.    In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiffs and the Class purchased the defective iPhone 4 units and used them in the manner in which they were intended, the direct and proximate result of which was injury and harm to Plaintiffs and the Class.

**FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation**

175.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

176.    Defendants negligently and recklessly misrepresented various material facts regarding the quality and character of the iPhone 4 and its service, under circumstances where Defendants either knew or, in the exercise of reasonable care, should have known that the representations were not true or were not known to be true. These misrepresentations were contained in various advertising, packaging, and correspondence from Defendants, and such

1   misrepresentations were further reiterated and disseminated by Defendants' officers, agents,

2   representatives, servants, or employees, acting within the scope of their authority.

3        177.    In reliance upon these misrepresentations, Plaintiffs and the Class purchased the

4   iPhone 4 for use as a cellular communication device.  Had Plaintiffs and the Class known of the

5   true facts, including, but not limited to, the fact that the iPhone 4 was defectively designed, they

6   would not have purchased the iPhone 4 from Defendants.

7        178.    As a direct and proximate consequence of Defendants' negligent

8   misrepresentations, Plaintiffs and the Class have been injured.

9
                                **SIXTH CAUSE OF ACTION**
10                                **Fraud By Concealment**

11       179.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though

12   fully set forth herein.

13       180.    Defendants knew that the iPhone 4 would lose connectivity when used in its

14   normal and intended manner, and Defendants concealed this fact.

15       181.    Defendants had a duty to disclose this information to Plaintiffs and the Class.

16       182.    Defendants failed to timely disclose this information to Plaintiffs and the Class.

17   Further, Defendants actively suppressed and concealed the fact that the iPhone 4 could not be

18   held in a manner consistent with the normal usage of a cellular communication device.

19       183.    Defendants concealed such information for the purpose of inducing the purchase

20   and use of the iPhone 4.

21       184.    Plaintiffs and the Class were unaware of the existence of these facts, which

22   Defendants failed to disclose and actively suppressed and concealed.

23       185.    If Plaintiffs and the Class had been aware of the facts not disclosed and concealed

24   by Defendants, they would not have agreed to the purchase or use of the defective iPhone 4 at

25   the price and contractual terms at which they were sold.

26       186.    Defendants concealed such material facts with the intent to defraud Plaintiffs and

27   the Class.

28

187.    Under these circumstances, especially since Defendants omitted and concealed material facts, Plaintiffs and the Class' reliance on Defendants' representations was reasonable.

188.    As a result of Defendants' material omissions, failure to disclose, and active concealment, Plaintiffs and the Class purchased and used Defendants' defective iPhone 4 in the manner in which they were intended, the direct and proximate result of which was injury and harm to Plaintiffs and the Class.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**

189.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

190.    Defendants have benefited and been enriched by the above-alleged conduct. Defendants have collected fees and generated revenue from the unlawful conduct described above.

191.    Defendants have knowledge of this benefit.

192.    Defendants have voluntarily accepted and retained this benefit.

193.    The circumstances, as described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class.

194.    Plaintiffs and the Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair and inequitable conduct as alleged herein.

**EIGHTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**

195.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

196.    By virtue of the aforementioned acts of Defendants, Defendants have breached their implied warranty of merchantability.

197.    Defendants impliedly warranted that the iPhone 4 was of merchantable quality and would perform adequately under ordinary and expected usage.

198.    The iPhone 4 is defective and does not perform as expected under ordinary and expected usage, thus rendering it inoperable.

199.    As a direct and proximate result of the aforementioned acts of Defendants, Defendants have been unjustly enriched.

200.    As a direct and proximate result of the aforementioned acts of Defendants, Plaintiffs and the Class have been harmed.

## NINTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for a Particular Purpose

201.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

202.    By virtue of the aforementioned acts of Defendants, Defendants have breached their implied warranty of fitness for a particular purpose.

203.    Defendants impliedly warranted that the iPhone 4 was fit for the particular purposes for which it was marketed, advertised, and sold to Plaintiffs and the Class.

204.    The iPhone 4 is not fit for such purposes and does not operate as Defendants advertised.

205.    As a direct and proximate result of the aforementioned acts of Defendants, Defendants have been unjustly enriched.

206.    As a direct and proximate result of the aforementioned acts of Defendants, Plaintiffs and the Class have been harmed.

## TENTH CAUSE OF ACTION
### Violation of the Federal Communications Act, 47 U.S.C. §§201 and 207

207.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

208.   Pursuant to the Federal Communications Act ("FCA"), 47 U.S.C. section 201(b), "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."

209.   Pursuant to 27 U.S.C. Section 207, Plaintiffs have a private right of action to enforce the rights granted under Section 201(b) in this Court.  "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction."

210.   Based on the conduct alleged above, Defendants have violated Section 201(b) of the FCA, because, as previously determined by the Federal Communication Commission in rulings relating to whether false and misleading claims can constitute a violation of the FCA, their charges for the iPhone 4 as an internet access device and the companion ATTM premium service plans as detailed above that Plaintiffs and the Class were required to purchase were unjust based upon the claims they made as compared to what was actually provided.

211.   ATTM also misrepresented or omitted material facts relating to the quality of the wireless coverage service that would be available to Plaintiffs and the Class using the iPhone 4. The iPhone 4 service was, thus, not provided in accordance with Defendants' terms and conditions or in accordance with the promise included in advertising for the iPhone 4, resulting in a material difference between their promises and actual performance.

212.   Even if Defendants are found to have been charging a "reasonable rate" for their products and services, they are still subject to a claim for damages for non-disclosure or false advertising of the material facts set forth herein based on their misrepresentations or failing to inform Plaintiffs and the Class of other material terms, conditions, or limitations on the services provided to Plaintiffs and the Class.

**ELEVENTH CAUSE OF ACTION**
**Violation of Cal. Bus. & Prof. Code §17200, *et seq.***

213.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

214.    Plaintiffs and the Class and/or the California Subclass have suffered injury in fact and lost money or property as a result of such unfair competition.

215.    Defendants have engaged in unfair, unlawful and fraudulent business practices as set forth above.

216.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of cal. Bus. & Prof. Code §17200, *et seq.*

217.    Defendants' acts and practices have and/or are likely to deceive members of the consuming public.

218.    Defendants' acts and practices are unlawful because they violate Cal. Civ. Code §§1572, 1709, 1710, 1770(a)(5), 1770(a)(7) and 1770(a)(9).  Defendants' acts and practices are also unlawful because they violate Bus. & Prof. Code §17500, *et seq.*  Specifically, Defendants marketed and sold the iPhone 4 in a defective condition and deceptively failed to disclose those defects as described above.  Defendants' marketing and sales, including said omissions, were material and substantial.  Defendants' acts and practices are also unlawful because they violate the Song-Beverly Act, Civ. Code §1790, *et seq.*

219.    Plaintiffs and the Class and/or the California Subclass seek an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under §17200, *et seq.*, plus interest, attorneys' fees and costs pursuant to, *inter alia*, C.C.P. §1021.5.

220.    Plaintiffs meet the standing requirements of Cal. Civ. Proc. Code § 382 to bring this cause of action because, among other reasons, the question is one of a common or general interest, is a question of many persons and/or the parties are numerous and it is impracticable to bring them all before the Court.

**TWELFTH CAUSE OF ACTION**
**Violation of Cal. Bus. & Prof. Code § 17500, *et seq*.**

221.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

222.    Plaintiffs and the Class and/or the California Subclass have suffered injury in fact and have lost money or property as a result of Defendants' violation of Cal. Bus. & Prof. Code §17500, *et seq*.

223.    Beginning on or before June 7, 2010, Defendants engaged in advertising and marketing to the public and offered the iPhone 4 for sale throughout the United States, including California.

224.    Defendants have engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of the iPhone 4.

225.    Defendants' advertising and marketing representations regarding the technical and other characteristics of the iPhone 4 are false, misleading and deceptive as set forth more fully above.

226.    At the time Defendants made and disseminated the statements alleged herein, they knew or should have known that the statements were untrue or misleading, and thus, in violation of §17500, *et seq*.

227.    Defendants actively concealed their knowledge that the iPhone 4 contained inherent defects.

228.    As a result, Plaintiffs and the Class and/or the California Subclass have been harmed.  Plaintiffs and the Class and/or the California Subclass seek restitution, disgorgement, injunctive relief and all other relief allowable under §17500, *et seq*.

229.    Plaintiffs meet the standing requirements of Cal. Civ. Proc. Code § 382 to bring this cause of action because, among other reasons, the question is one of a common or general interest, is a question of many persons and/or the parties are numerous and it is impracticable to bring them all before the Court.

**THIRTEENTH CAUSE OF ACTION**
**Breach of the Song-Beverly Act,**
**Cal. Civ. Code §1790, *et seq.***

230.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

231.    The iPhone 4 is a "consumer good" within the meaning of Cal. Civ. Code §1791(a).

232.    Defendants' implied warranty of merchantability arose out of and/or were related to the sale of the iPhone 4.

233.    As set forth more fully above, Defendants have failed to comply with their obligations under their implied warranty of merchantability.

234.    Plaintiffs and the Class and/or the California Subclass have suffered and will continue to suffer damages as a result of Defendants' failure to comply with their warranty obligations.  Accordingly, Plaintiffs and the Class and/or the California Subclass are entitled to recover such damages under the Song-Beverly Act, including damages pursuant to Cal. Civ. Code §§1791.1(d) and 1974.

235.    Defendants' breaches of warranty, as set forth above, were willful.  Accordingly, a civil penalty should be imposed upon Defendants in an amount not to exceed twice the amount of actual damages.

**FOURTEENTH CAUSE OF ACTION**
**Violation of the Consumer Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §1750, *et seq.***

236.    Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

237.    Defendants have engaged in deceptive practices, unlawful methods of competition and/or unfair acts, as defined by Cal. Civ. Code §1750, *et seq.*, to the detriment of Plaintiffs and the Class and/or the California Subclass.  Plaintiffs and the Class and/or the California Subclass

1   have suffered harm as a direct and proximate result of Defendants' violations of law and

2   wrongful conduct as alleged herein.

3       238.   Defendants intentionally, knowingly and unlawfully perpetrated harm upon

4   Plaintiffs and the Class and/or the California Subclass by the above described acts.  To wit,

5   Defendants' actions in selling defective products and failing to remedy these defects have

6   violated the following provisions of the CLRA:

7       (a)   Cal. Civ. Code §1770(a)(5): Representing that goods or services have

8   sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not

9   have;

10       (b)   Cal. Civ. Code §1770(a)(7): Representing that goods or services are of a

11   particular standard, quality or grade, or that goods are of a particular style or model, if they are of

12   another;

13       (c)   Cal. Civ. Code §1770(a)(9): Advertising goods or services with intent not

14   to sell them as advertised;

15       (d)   Cal. Civ. Code §1770(a)(14): Representing that a transaction confers or

16   involves rights, remedies or obligations which it does not have or involve, or which are

17   prohibited; and

18       (e)   Cal. Civ. Code §1770(a)(19): Inserting an unconscionable provision in the

19   contract.

20       239.   Defendants' policies and practices are unlawful, unethical, oppressive, fraudulent

21   and malicious.  The gravity of the harm to all consumers and to the general public from

22   Defendants' policies and practices far outweighs any purported utility those policies and

23   practices have.

24       240.   Pursuant to Cal. Civ. Code §1780(a), Plaintiffs seeks

25       (a)   an order enjoining Defendants from engaging in the methods, acts or

26   practices alleged herein;

27       (b)   actual damages;

28

1          (c)      restitution of money to Plaintiffs and the Class and/or the California

2  Subclass;

3          (d)      punitive damages;

4          (e)      attorneys' fees and costs; and

5          (f)      all other relief that this Court deems proper.

6

7                          **FIFTEENTH CAUSE OF ACTION**
**Violations of the Florida Deceptive and Unfair Trade Practices Act,**
8                          **Fla. Stat. §§501.201, *et seq.***
(The Florida Plaintiffs and the Florida Subclass)

9

10         241.    Plaintiff Milrot incorporates by reference paragraphs 1 through 149 above as

11  though fully set forth herein.

12         242.    Plaintiff Milrot brings this cause of action on behalf of the Florida Subclass in the

13  alternative to all other California law claims in the event the Court finds that California

14  substantive law does not apply to Plaintiff Milrot's Claims.

15         243.    Plaintiff Milrot brings this claim pursuant to Florida's Deceptive and Unfair

16  Trade Practices Act ("FDUTPA"), Fla. Stat. §§501.201, *et seq*.

17         244.    At all relevant times, Defendants provided goods and/or services and thereby

18  were engaged in trade or commerce, as defined by Fla. Stat. §501.203.

19         245.    At all relevant times, Plaintiff Milrot and the Florida Subclass were consumers, as

20  defined by Fla. Stat. §501.203.

21         246.    Defendants committed a deceptive and unfair trade practice of designing,

22  manufacturing, marketing, and distributing the iPhone 4, which they knew or should have known

23  was defective, but failed to disclose the defect.

24         247.    The fact that the iPhone 4 was defective and the nature of the defect are material

25  in that such facts would likely affect a reasonable consumer's decision whether or not to

26  purchase the iPhone 4.

27

28

248.    Plaintiff Milrot and the Florida Subclass were aggrieved and suffered losses as a result of Defendants' unfair or deceptive practices in that they purchased the iPhone 4 and contracted with ATTM for cellular telephone and other services when the iPhone 4 was defective and such fact was not disclosed.

249.    The actual damages suffered by Plaintiff Milrot and the Florida Subclass were directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

250.    Defendants' practice and course of conduct, as alleged herein, is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment.

251.    Further, Defendants have engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

252.    Upon information and belief, Defendants acted and continue to act in an identical or substantially similar manner with respect to the entire putative Florida Subclass by adopting and implementing identical or substantially similar designing, manufacturing, marketing, and distributing of the iPhone 4 to consumers despite its defect.

253.    Plaintiff Milrot has retained the services of the undersigned attorneys who are entitled to a reasonable fee upon prevailing pursuant to Fla. Stat. §501.2105.

254.    Plaintiff Milrot, on behalf of herself and the Florida Subclass, are entitled to their actual damages as provided by Fla. Stat. §501.211(2); injunctive relief as provided by Fla. Stat. §501.211(1); declaratory relief as provided by Fla. Stat. §501.211(1); and reasonable attorneys' fees and costs to counsel for the Class pursuant to Fla. Stat. §501.2105.

**SIXTEENTH CAUSE OF ACTION**
**Violations of the Tennessee Consumer Protection Act ("TCPA"),**
**T.C.A. §§47-18-101, *et seq.***
(Plaintiff Purdue and the Tennessee Subclass)

255.    Plaintiff Purdue incorporates by reference paragraphs 1 through 149 above as though fully set forth herein.

256.     Plaintiff Purdue brings this cause of action on behalf of the Tennessee Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to Plaintiff Purdue's Claims.

257.     Defendants are "persons" within the meaning of the T.C.A. §47-18-103(9), and provide "services" and sell "goods" all within the meaning of T.C.A. §§47-18-103(10) and 103(5).

258.     Plaintiff Purdue and the Tennessee Subclass are "consumers" within the meaning of T.C.A. §47-18-103(11).

259.     Defendants' unfair or deceptive acts or practices as described herein were undertaken by Defendants in transactions intended to result, or which resulted, in the sale of goods and services to consumers, and were intended to induce, and did in fact induce, Plaintiff Purdue and the Tennessee Subclass to purchase for personal use such goods and services, which they would not have otherwise purchased.  Further, Defendants' suppression and/or concealment of the material facts as described herein was calculated to induce, and did in fact induce, Plaintiff Purdue and the Tennessee Subclass to provide valuable consideration to Defendants.

260.     Defendants' practices, acts, and course of conduct as described herein violate the TCPA in that they caused the following unfair and deceptive practices to occur:

(a)     Defendants "represent[ed] that goods or services . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," in violation of section 47-18-104(b)(5) of the TCPA;

(b)     Defendants advertised goods and services with the intent not to sell them as advertised, in violation of T.C.A. §47-18-104(b)(9); and

(c)     Defendants represented that a transaction confers or involves rights, remedies, or obligations, which it does not have or involve, or which are prohibited by law, in violation T.C.A. §47-18-104(b)(12).

261.     Defendants' practices, acts, and courses of conduct as described herein are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her

detriment.  In engaging in their violations of the TCPA, Defendants actively concealed and failed to disclose material facts about the true characteristics of the iPhone 4.

262.    As a result of Defendants' acts and practices as alleged herein, Plaintiff Purdue seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices, as well as the above-referenced violations of the TCPA.

**SEVENTEENTH CAUSE OF ACTION**
**Violations of the Texas Deceptive Trade Practices Act ("DTPA"),**
**Tex. Bus. & Com. Code Ann. §§17.50, *et seq.***
(The Texas Plaintiffs and the Texas Subclass)

263.    The Texas Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

264.    The Texas Plaintiffs brings this cause of action on behalf of the Texas Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the Texas Plaintiffs Claims.

265.    The Texas Plaintiffs and the Texas Subclass are consumers as defined by the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§17.50, *et seq.* Defendants may be sued under the DTPA.

266.    Defendants engaged in false, misleading, or deceptive acts and practices, and the Texas Plaintiffs and the Texas Subclass relied on Defendants to their detriment.  Defendants engaged in false, misleading, and/or deceptive acts and practices by representing that the iPhone 4 had characteristics, uses, and benefits that it did not have.  Defendants further engaged in deceptive trade practices by representing that the iPhone 4 was of a particular standard, quality, or grade that it was not.

267.    Defendants have further violated the DTPA by violating express and implied warranties related to the iPhone 4.

268.    Defendants further violated the DTPA by failing to disclose information about the iPhone 4's antenna and reception issues, which Defendants were aware of at all times pertinent hereto, and Defendants' failure to disclose these material facts was intended to induce the Texas

1    Plaintiffs and the Texas Subclass into purchasing an iPhone 4 when they otherwise would not

2    have entered into such transactions if this information had been disclosed.

3        269.    The Texas Plaintiffs and the Texas Subclass relied on Defendants' false

4    statements and omissions to their detriment.

5        270.    Defendants further acted unconscionably by committing acts or practices that to

6    the Texas Plaintiffs and the Texas Subclass' detriments and took advantage of the Texas

7    Plaintiffs and the Texas Subclass' lack of knowledge, ability, experience, or capacity to a grossly

8    unfair degree.

9        271.    Defendants' violations of the DTPA were committed knowingly and intentionally

10                    **EIGHTEENTH CAUSE OF ACTION**
                **Deceptive Acts and Practices in Violation of**
11                    **N.Y. Gen. Bus. Law § 349**
                (Plaintiff Badolato and the New York Subclass)
12

13        272.    Plaintiff Badolato incorporates by reference paragraphs 1 through 149 above as

14    though fully set forth herein.

15        273.    Plaintiff Badolato brings this cause of action on behalf of the New York Subclass

16    in the alternative to all other California law claims in the event the Court finds that California

17    substantive law does not apply to Plaintiff Badolato's Claims.

18        274.    Defendants' representations and omissions complained of herein are likely to

19    mislead a reasonable consumer acting reasonably under the circumstances.

20        275.    Thus, Defendants actions constitute deceptive trade practices within the meaning

21    of N.Y. Gen. Bus. Law § 349(a).

22        276.    As a direct and proximate result of the aforementioned acts of Defendants, the

23    Plaintiff Badolato and the New York Subclass have been harmed.

24        277.    As such, Plaintiff Badolato and the New York Subclass are entitled to recover

25    damages under § 349.

26        278.    Moreover, pursuant to § 349, Plaintiff Badolato and the New York Subclass pray

27    for an order enjoining Defendants' wrongful conduct.

28

**NINETEENTH CAUSE OF ACTION**
**False Advertising in Violation of**
**N.Y. Gen. Bus. Law § 350, *et seq.***
(Plaintiff Badolato and the New York Subclass)

279.    Plaintiff Badolato incorporates by reference paragraphs 1 through 149 above as though fully set forth herein.

280.    Plaintiff Badolato brings this cause of action on behalf of the New York Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to Plaintiff Badolato's Claims.

281.    Defendants' advertisements and representations complained of herein are "misleading in a material respect," as defined by N.Y. Gen. Bus. Law § 350-a.

282.    As a result, Defendants' advertisements and representations are unlawful under N.Y. Gen. Bus. Law § 350.

283.    As a direct and proximate result of the aforementioned acts of Defendants, the Plaintiff Badolato and the New York Subclass have been harmed.

**TWENTIETH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. § 56:8-1, *et seq.***
(The New Jersey Plaintiffs and the New Jersey Subclass)

284.    The New Jersey Plaintiffs incorporate by reference paragraphs 1 through 149 above as though fully set forth herein.

285.    The New Jersey Plaintiffs bring this cause of action on behalf of the New Jersey Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the New Jersey Plaintiffs' Claims.

286.    By virtue of the aforementioned acts of Defendants, Defendants have engaged in unlawful conduct in violation of N.J. Stat. Ann. § 56:8-1.

287.    As a direct and proximate result of the aforementioned acts of Defendants, the New Jersey Plaintiffs and the New Jersey Subclass have suffered ascertainable losses.

**TWENTY-FIRST CAUSE OF ACTION**
**Violation of the Pennsylvania**
**Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),**
**73 Pa. Stat. Ann. § 201-1, *et seq.***
(Plaintiff Rodgers and the Pennsylvania Subclass)

288.    Plaintiff Rodgers incorporates by reference paragraphs 1 through 149 above as though fully set forth herein.

289.    Plaintiff Rodgers brings this cause of action on behalf of the Pennsylvania Subclass in the alternative to all other California law claims in the event the Court finds that California substantive law does not apply to the Plaintiff Rodgers' Claims.

290.    Defendants represented to consumers that the iPhone 4 and its accompanying AT&T wireless service were of a particular standard, quality or grade.

291.    Notwithstanding Defendants' representations, due to the design and/or manufacturing defects contained in the iPhone 4, the iPhone 4 and accompanying AT&T wireless service was not of the standard, quality or grade that Defendants represented.

292.    Further, Defendants advertised the iPhone 4 and its accompanying AT&T wireless service with intent not to sell it as advertised.

293.    The above-described actions of Defendants constitute deceptive acts or practices as defined by 73 Pa. Stat. Ann. §§ 201-2(4)(vii) and (ix).

294.    As such, the above-described actions of Defendants are unlawful and violate 73 Pa. Stat. Ann. § 201-3.

295.    As a direct and proximate result of the aforementioned acts of Defendants, Plaintiff Rodgers and the Pennsylvania Subclass have been harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and for all others similarly situated, respectfully request that the Court:

A.    Declare that Defendants' conduct as alleged herein violates applicable law;

B.    Enjoin Defendants' continuing violations of applicable law;

1        C.      Award statutory damages to Plaintiffs, the Class and the Subclasses, as provided

2   by federal law;

3        D.      Award Plaintiffs reasonable attorneys' fees and costs of suit;

4        E.      Award compensatory damages, statutory damages, and all other forms of

5   monetary and non-monetary relief recoverable under state law; and

6        F.      Grant such other and further relief as the Court deems just and proper.

7                                    **JURY DEMAND**

8        Plaintiffs demand a trial by jury on all claims so triable.

9   DATED:  February 7, 2011                    ROTHKEN LAW FIRM

10

11                                              IRA P. ROTHKEN (State Bar No. 160029)

12   _____

13                                                  IRA P. ROTHKEN
                                                3 Hamilton Landing, Ste 280
14                                              Novato, CA  94949
                                                Telephone: 415/924-4250
15                                              415/924-2905 (fax)
                                                ira@techfirm.net
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STUART A. DAVIDSON
Florida Bar No. 084824
CULLIN A. O'BRIEN
Florida Bar No. 597341
MARK DEARMAN
Florida Bar No. 0982407
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cobrien@rgrdlaw.com
mdearman@rgrdlaw.com

Jennifer Sarnelli (State Bar No. 242510)
GARDY & NOTIS, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone: 201/567-7377
201/567-7337 (fax)
jsarnelli@gardylaw.com

Behram V. Parekh (State Bar No. 180361)
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue
Fourth Floor
El Segundo, CA  90245
Telephone: 310/536-1000
310/536-1001 (fax)
bvp@kirtlandpackard.com

Interim Co-Lead Class Counsel