PENELOPE A. PREOVOLOS (CA SBN 87607)
(PPreovolos@mofo.com)
ANDREW D. MUHLBACH (CA SBN 175694)
(AMuhlbach@mofo.com)
ALEXEI KLESTOFF (CA SBN 224016)
(AKlestoff@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

*Attorneys for Defendant*
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE IPHONE 4 PRODUCTS LIABILITY LITIGATION | Case No. 5:10-md-02188-RMW<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL SETTLEMENT APPROVAL**<br><br>Date:  July 13, 2012<br>Time:  9:00 a.m.<br>Place:  Courtroom 6<br>The Honorable Ronald Whyte |

sf-3148962

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................................... 1
II. BACKGROUND ............................................................................................................. 2
    A. Plaintiffs' Claims ................................................................................................ 2
    B. The iPhone 4 ....................................................................................................... 2
    C. The Settlement Negotiations .............................................................................. 4
    D. The Settlement Class .......................................................................................... 5
    E. Key Settlement Terms ........................................................................................ 5
    F. Preliminary Approval ......................................................................................... 5
    G. Class Notice ........................................................................................................ 6
III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 7
    A. The Settlement is Entitled to a Presumption of Fairness .................................... 8
    B. Even Without a Presumption of Fairness, the Settlement is "Fair, Reasonable, and Adequate" Under the Criteria Applied in the Ninth Circuit ......... 8
        1. The Strength of Plaintiffs' Case .............................................................. 9
        2. Risk, Complexity, Duration, and Expense of Further Litigation .......... 11
        3. Likelihood of Maintaining Class Certification ..................................... 11
        4. Settlement Value ................................................................................... 12
        5. Extent of Discovery and Stage of the Proceedings ............................... 12
        6. The Experience and Views of Counsel ................................................ 12
        7. The Reaction of Settlement Class Members ........................................ 12
        8. The Settlement is the Product of Arm's-Length Negotiations .............. 12
IV. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Annunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................................. 10

*Arabian v. Sony Elecs., Inc.*,
   No. 05-CV-1741 WQH (NLS), 2007 U.S. Dist. LEXIS 12715
   (S.D. Cal. Feb. 22, 2007) ........................................................................................................ 11

*Churchill Vill. L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................................ 6, 9

*Cohen v. DirecTV Inc.*,
   178 Cal. App. 4th 966 (2009) ................................................................................................. 10

*Ficalora v. Lockheed Cal. Co.*,
   751 F.2d 995 (9th Cir. 1985) .................................................................................................. 13

*Hovsepian v. Apple, Inc.*,
   No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009) ............. 11

*Hughes v. Microsoft Corp.*,
   No. C 98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 21, 2001) ....................... 13

*In re Apple Inc. Secs. Litig.*,
   No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685
   (N.D. Cal. May 17, 2011) ....................................................................................................... 13

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................................................. 7

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ................... 8

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997),
   *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........................................................................................ 8

*Mazza v. Am. Honda*,
   666 F.3d 581 (9th Cir. 2012) .................................................................................................. 10

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 Fed. App'x 489 (9th Cir. 2009) ................ 10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................................................................... 7

*Pfizer Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010) .......................................................................................... 10

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................................................ 11

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
   ___ U.S. ___, 131 S. Ct. 2541 (2011) ............................................................................. 12

**STATUTES, REGULATIONS, AND RULES**

28 U.S.C.
   § 1715(b) ............................................................................................................................ 7

FED. R. CIV. P.
   23(b)(3) ............................................................................................................................... 6
   23(c)(2)(B) .......................................................................................................................... 6
   23(c)(3) ............................................................................................................................... 6
   23(e)(2) ............................................................................................................................... 7

**I.    PRELIMINARY STATEMENT**

Defendant Apple Inc. ("Apple") files this memorandum in support of the proposed settlement of consolidated consumer class actions regarding the iPhone 4. The underlying lawsuits alleged that iPhone 4 owners experienced signal attenuation and dropped calls when the phone was held in an aggressive left-handed grip that bridged a gap in the phone's antenna. In fact, very few iPhone 4 owners ever experienced the alleged issue. Moreover, shortly after the iPhone 4's release, Apple eliminated the issue by offering free "bumpers" (cases), which prevent any antenna issue from occurring, or full refunds to any purchaser who was not completely satisfied with the iPhone 4. The present settlement recognizes the relief that Apple has already provided, and offers a cash payment for the remaining small fraction of iPhone 4 owners who believe they experienced the alleged antenna issue but who were not willing to use a bumper or case. The settlement also provides direct notice to Settlement Class Members of the continuing availability of a free bumper. The settlement is precisely tailored to the realities of the litigation, addresses the only potential claims that were not already remedied by Apple, and is clearly "fair, reasonable and adequate."

As Apple has contended throughout this litigation, iPhone 4 owners have been overwhelmingly satisfied with their phones, and plaintiffs' claim that the iPhone 4's antenna is "defective" is meritless. Data about iPhone 4's performance in the real world refutes any such claim. Thus, iPhone 4 has a "dropped call" rate comparable to that for iPhone 3G and 3GS; this could not be the case if the antenna were defective. Further, the return rate for antenna-related issues for iPhone 4 was extraordinarily low, as was the percentage of customer complaints regarding the issue. In short, there is no "defect."

Nonetheless, Apple chose to resolve any possible customer issues by offering a free bumper or a full refund. Shortly after iPhone 4's release, Apple held a widely-publicized press conference where Steve Jobs announced the bumper offer and return right, and Apple followed up with e-mails sent directly to iPhone 4 owners reiterating the bumper and refund offers. Plaintiffs did not and do not dispute that Apple provided this broad relief. Nor, critically, have plaintiffs ever disputed that using a bumper or case resolves the antenna issue for any iPhone 4 owner who

believes that he or she experienced the alleged issue.  Rather, plaintiffs sought to salvage their claims by arguing that some iPhone 4 owners were unwilling to use a bumper or case.  While Apple disputes that this is so, the present settlement puts to rest this last remaining issue by offering a cash payment of $15 to such iPhone 4 owners.

The Settlement Class Members' response to the settlement has been overwhelmingly positive.  Although Apple sold approximately 27.1 million iPhone 4 units in the United States and direct notice was sent to approximately 15.7 million Settlement Class Members, to date there have been only nine objections and seventy-three opt-outs.[1]  As set forth below, under applicable law, this response strongly supports approval of the settlement.

The settlement is "fair, reasonable, and adequate" and should receive final approval.

## II.  BACKGROUND

### A.  Plaintiffs' Claims

The present litigation consists of eighteen federal cases filed in this and other courts that were transferred to and consolidated before this Court pursuant to the MDL Panel's order dated October 8, 2010.  Not surprisingly, almost all the cases were filed before Apple's July 16 press conference and follow-up e-mail announcing the bumper offer and return right.  Plaintiffs filed a Consolidated Amended Complaint ("Complaint") on February 7, 2011.  The Complaint alleges claims for product defect; breaches of warranty; fraud and misrepresentation; violation of the Federal Communications Act; violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); and unjust enrichment.

### B.  The iPhone 4

The iPhone 4 was announced on June 7, 2010, at the Apple Worldwide Developers conference and was launched (shipped) on June 24, 2010.  Contrary to plaintiffs' claims that the

---

[1] Only two weeks remain for objections and opt-outs – the deadline is June 15, 2012 – so it is unlikely that the number as a percentage of total class members or total notice recipients will materially change.

1  iPhone 4 is "defective," the iPhone 4 has been an overwhelming success in the marketplace, with
2  approximately 27.1 million units sold in the United States through February 17, 2012.

3  Shortly after launch, reports began to appear alleging so-called antenna attenuation when
4  the phone is gripped in the user's left hand in such a way as to bridge (close) the gap in the
5  phone's cellular antenna. The issue was largely, if not entirely, one of perception. All cellular
6  phones experience reduced signal strength when the phone is gripped in such a way as to cause
7  antenna attenuation. Moreover, as cellphone users well know, all cellular phones sometimes drop
8  calls, for a variety of reasons. But unlike other phones, on iPhone 4, "X marks the spot" – there is
9  a visible gap in the cellular antenna, marking the location where the user can grip the phone to
10 have the maximum effect on the antenna. That is not the case for other recent cell phones, where
11 the antenna structure is less visible to the user. Thus, user perception of the issue was heightened,
12 and users likely believed they were experiencing the issue when they in fact experienced dropped
13 calls for other reasons.

14 On July 16, 2010, Apple held a widely-publicized press conference at which Steve Jobs
15 explained this background. Mr. Jobs explained that other cellular phones experience attenuation
16 when held, but because the iPhone 4 has a visible antenna gap, users are aware of it. As Mr. Jobs
17 noted, however, the actual customer complaint rate about the issue was extremely low, and it
18 remains so today.

19 Nonetheless, Apple chose to deal with the customer perception issue by offering iPhone 4
20 owners a free bumper for the iPhone 4 and, if they were not fully satisfied with the phone, a full
21 refund. Those offers were made during the widely-covered July 16 press conference, as well as
22 in an e-mail sent directly to all registered iPhone 4 owners. Notably, the bumper offer was not
23 limited to iPhone 4 owners who believed they had experienced the antenna issue; it permitted any
24 owner who desired a bumper to obtain one.

25 Because the antenna issue in fact affected very few iPhone 4 owners, Apple changed the
26 bumper offer on September 30, 2010, to limit it to owners who believe that they have actually
27 experienced an antenna issue. Apple made clear at the time it announced the change and
28

sf-3148962          3

1  continues to make clear on its AppleCare Support website that any such iPhone 4 owner can
2  obtain a free bumper simply by contacting AppleCare and requesting one.

3        Plaintiffs' effort in the litigation to salvage their claims by arguing that the bumper
4  impaired the "aesthetics" of the phone is implausible on its face: most cellular telephones are
5  kept in cases.

6        A number of different data points refute the claim that there is an antenna "defect." Data
7  regarding the number of calls dropped by the iPhone 4 indicates that the number of dropped calls
8  is comparable to iPhone 3GS and iPhone 3G. This could not be the case if the alleged antenna
9  issue were causing calls to drop for any significant percentage of iPhone 4 owners. Similarly,
10 Apple's return rate for iPhone 4 owners claiming to have experienced an issue with their phone's
11 antenna is extremely low – approximately 0.0062% of total sales. Finally, customer complaint
12 data refutes any claim of defect. Antenna-related complaints are not tracked separately, but rather
13 are captured as part of the larger category of reception-related complaints. Even that
14 overinclusive percentage, however, is significantly less than 1% of iPhone 4 owners. Neither the
15 iPhone 4 nor its antenna is "defective."

16     **C.**    **The Settlement Negotiations**

17       The negotiations between the parties were lengthy and contentious. Prior to commencing
18 mediation, the parties engaged in extensive pre-mediation discovery. Apple supplied plaintiffs
19 with over 20,000 pages of information about, among other things, the design of the antenna,
20 dropped call rates, antenna testing, sales data, return rates, customer complaints and advertising.
21 (Declaration of Penelope A. Preovolos in Support of Final Settlement Approval ("Preovolos
22 Decl.") ¶ 2.)

23       The parties conducted three full-day structured mediation sessions before the Honorable
24 Daniel Weinstein (ret.) and Catherine Yanni, Esq., of JAMS on June 23, July 13, and August 4,
25 2011. (*Id.* ¶ 3; Declaration of Hon. Daniel Weinstein (Ret.) and Catherine A. Yanni in Support of
26 Final Approval ("Weinstein/Yanni Decl.") at 2.) The parties also engaged in numerous
27 telephonic negotiations. (Preovolos Decl. ¶ 3.) The parties did not address the issue of plaintiffs'
28 attorney's fees until all material terms of the settlement had been agreed upon. (*Id.* ¶ 4;

Weinstein/Yanni Decl. at 6.) The parties negotiated attorney's fee issues only through the mediators; they did not discuss or attempt to negotiate fees directly. (Preovolos Decl. at 4.) On January 24, 2012, the parties met again in person with the mediators to finalize the settlement agreement and exhibits and the settlement was signed that evening.

### D. The Settlement Class

The Settlement Class is defined as follows:

> All United States residents who are or were the original owners of an iPhone 4. The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; and Apple's legal representatives, successors, and assigns.

(Settlement Agreement at 5, ECF No. 45-1.) Apple is not able to determine the actual number of potential Settlement Class Members, because some Settlement Class Members bought more than one iPhone 4. However, Apple's records show that it sold approximately 27.1 million iPhone 4 units in the United States potentially covered by the Settlement.

### E. Key Settlement Terms

The Settlement Agreement provides $15 cash payments to Settlement Class Members who own or owned an iPhone 4 and who declare that they experienced antenna or reception issues; were unable to return their phone without incurring any costs; were unwilling to use a case or free bumper; and that they completed or were unable to complete reception-related troubleshooting steps listed on Apple's support website.

The Settlement Agreement also provides for direct notice to Settlement Class Members of the availability of a free bumper, and that the bumper program will remain available for eighteen (18) months after Apple discontinues sales of the iPhone 4.

To date, the Claims Administrator has received approximately 44,043 claims. The Claims Period runs until August 28, 2012.

### F. Preliminary Approval

The Court held a hearing on plaintiffs' unopposed motion for preliminary approval of the settlement on February 17, 2012. The Court granted preliminary approval on February 17, 2012. (*See* Order Granting Conditional Certification of a Settlement Class, Approval of Forms and

1 | Methods of Notice, and Preliminary Approval of Settlement Agreement and Release, ECF No.
2 | 47.)

     **G.**    **Class Notice**

The Class Notice met the requirements of due process and of Federal Rule of Civil Procedure 23(b)(3). Courts must direct to class members "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). Such notice must contain basic information about the class action and class members' rights.[2] The Ninth Circuit has further required that notice to absent class members "'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (citation omitted); *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Notice here satisfied these requirements.

Direct notice was sent via e-mail of the Summary Notice to 15,714,279 Settlement Class Members. (Declaration of Jeffrey Gyomber in Support of Final Settlement Agreement ("Gyomber Decl.") ¶ 8.) The notice list was compiled by the settlement administrator, Kurtzman Carson Consultants ("KCC"), from a list of 18,134,168 iPhone 4 product registration records with email addresses provided by Apple. (Declaration of Nancy Laxson-Highton in Support of Final Settlement Agreement ¶ 3) KCC removed 2.4 million email addresses from the registration list as duplicates. (Gyomber Decl. ¶ 5) A further 4,039 email addresses were removed as belonging to Apple employees. The remaining notice list of 15.7 million addresses represents 58% of the approximately 27.1 million iPhone 4 units sold in the United States during the settlement class

---

[2] Specifically, Rule 23 prescribes that class action notices contain: "the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3)." FED. R. CIV. P. 23(c)(2)(B).

period. If that notice list represents 18.1 million iPhones due to the elimination of duplicate addresses, then notice was sent to at least 67% of the potential Settlement Class Members.[3]

The Summary Notice was also published in the April 2, 2012, edition of *USA Today* and in the May 2012 issue of *Macworld* (which went on sale on April 10, 2012). (Declaration of Sissie Twiggs in Support of Final Settlement Approval ("Twiggs Decl.") ¶¶ 2-3.) In addition, the Claims Administrator established a Settlement Website (www.iPhone4settlement.com) where the Class Notice and the Claims Package were posted. (Gyomber Decl. ¶ 7.) The Class Notice and Claims Package were mailed at Apple's expense to any Settlement Class Member who called a toll-free telephone number that was established at Apple's expense. (*Id.* ¶ 9.)

The Class Action Fairness Act of 2005 ("CAFA") additionally requires that class action defendants notify appropriate federal and state officials of any proposed settlement. 28 U.S.C. § 1715(b). On February 21, 2012, pursuant to CAFA, Apple sent a Notice of Class Settlement to the U.S. Attorney General and to the attorneys general of every state. (Preovolos Decl. ¶ 6.) The Notice attached copies of the Complaint, the Stipulation of Settlement and all exhibits thereto, and the Court's Preliminary Approval Order. (*Id.*) Neither the U.S. Attorney General nor any of the states' attorneys general has objected to the settlement. (*Id.*)

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A court may approve a settlement that binds class members only after a hearing and a finding that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Federal law favors settlements in class action cases: "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("strong judicial policy . . . favors settlements") (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). As the Ninth Circuit emphasized in *Officers for Justice,* the trial court must scrutinize the settlement

---

[3] Because the number of unique persons who are the purchasers of iPhone 4 units is not known, Apple is unable to provide a more precise estimate of the percentage who were sent email notice.

1  simply "to the extent necessary to reach a reasoned judgment that the agreement is not the
2  product of fraud or overreaching by, or collusion between, the negotiating parties, and that the
3  settlement, taken as a whole, is fair, reasonable and adequate to all concerned." 688 F.2d at 625.

### A. The Settlement is Entitled to a Presumption of Fairness

A presumption of fairness exists where experienced class counsel are involved and the settlement is reached through arm's-length negotiations after relevant discovery has taken place. *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, *24-25 (N.D. Cal. Aug. 2, 2011). Here, each of these criteria is easily met. The attorneys representing the class are well-informed, experienced, and sophisticated counsel. The settlement was the product of arm's-length—and quite contentious—negotiations that took place over the course of many months and three full days of mediation. (Preovolos Decl. ¶ 3.) Finally, class counsel had completed sufficient investigation and discovery to adequately evaluate the settlement. Apple provided plaintiffs with over 20,000 pages of extensive pre-mediation discovery concerning the iPhone 4 antenna design, dropped call rates, antenna testing, sales data, return rates, customer complaints and advertising, as well as other relevant information. (*Id*. ¶ 2.)

### B. Even Without a Presumption of Fairness, the Settlement is "Fair, Reasonable, and Adequate" Under the Criteria Applied in the Ninth Circuit

In the Ninth Circuit, the factors that courts consider in assessing the fairness, reasonableness, and adequacy of a settlement are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Churchill Vill.*, 361 F.3d at

575-76.[4] In addition, "the settlement may not be the product of collusion among the negotiating parties." *Id*. at 576 (*citing Class Plaintiffs*, 955 F.2d at 1290). Each of these factors supports approval of the settlement.

### 1. The Strength of Plaintiffs' Case

Plaintiffs alleged under various legal theories that the iPhone 4 was defective and that Apple engaged in misrepresentations regarding the iPhone 4. Had the litigation continued, Apple would have shown that plaintiffs' claims were both factually and legally baseless.

Most fundamentally, the vast majority of iPhone 4 owners have not experienced and will not experience the alleged antenna issue. Moreover, Apple eliminated any possible claim when it made available to any iPhone 4 owner who did believe he or she had experienced the issue either a free bumper (a complete cure) or a full refund. Accordingly, plaintiffs and the purported class suffered no injury, and they have no claim.

Further, the iPhone 4 and its antenna are not "defective." In other grip orientations, the iPhone 4 outperforms its predecessor, the iPhone 3GS. Moreover, to result in a dropped call, attenuation from an aggressive left-hand grip must occur while the user is in a weak network signal environment. In a moderate to strong signal environment, the degree of attenuation is simply not sufficient to affect the call. As the data makes clear, that combination is a very rare occurrence. Put simply, the call drop performance proves that the iPhone 4 antenna performs adequately and is not defective. A phone that does not have abnormally high dropped call rates *cannot* be said to have a "defective" antenna regardless of what might be measured in a laboratory.

That plaintiffs "defect" claims are meritless is also confirmed by the fact that, as set forth above, returns related to antenna issues were few, and that Apple has received very few complaints about the alleged issue. The dropped call data, the customer complaint data and the return rates all make clear that the iPhone 4 is *not* a defective product. Plaintiffs' warranty claims

---

[4] In *Churchill*, the Court identified an eighth "non-exclusive" factor, the presence of a governmental participant. 361 F.3d at 575-76. This factor is inapplicable to this case, and is thus not considered here. *Id*. at n.7.

1  would have failed both because they could not show that the iPhone had a defect in materials or

2  workmanship, and because the offer to provide a bumper or a refund fulfilled any possible

3  warranty obligation.

4      Plaintiffs' efforts to portray this as a misrepresentation case would have fared no better.

5  Plaintiffs could point to almost no representations by Apple with respect to the iPhone 4's

6  antenna. The representations they do identify are either accurate or are nonactionable puffery.

7  Thus, the complaint alleges statements at the WWDC that the iPhone 4 is "the most precise thing

8  we have ever made" and that its "brilliant design" has "integrated antennas in the structure of the

9  phone, it's never been done before and it's really cool engineering."  (Master Consol. Compl.

10 ¶ 107, ECF No. 14.)  Plaintiffs do not dispute that the antennas are integrated into the structure of

11 the phone. The remainder of the statements exemplify non-actionable "puffery" under the

12 various statutes upon which plaintiffs rely. "Precise," "brilliant design" and "cool engineering"

13 are not the statements of fact on which misrepresentation claims are built.[5]

14     Moreover, it is highly unlikely that the overwhelming majority of the purported class ever

15 saw an alleged representation about the antenna. A plaintiff who was not exposed to a specific

16 advertisement that is claimed to be misleading does not have a misrepresentation claim. *Cohen v.*

17 *DirecTV Inc.*, 178 Cal. App. 4th 966, 978-79 (2009); *Pfizer Inc. v. Superior Court*, 182 Cal.

18 App. 4th 622, 631 (2010). Nor would plaintiffs have been able to demonstrate reliance on

19 representations respecting the antenna. Given that the vast majority of class members never *saw*

20 the alleged misrepresentations, they could not have relied on them. This fact bars their claims.

21 *Mazza v. Am. Honda*, 666 F.3d 581, 595 (9th Cir. 2012). Nor could plaintiffs and the purported

22 class members have shown that the antenna representations were a substantial factor in their

23 decision to purchase the iPhone 4. Most basically, plaintiffs and the purported class members

24 could not show causation. In the unlikely event that plaintiffs or the purported class members felt

---

[5] *See, e.g., Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) ("quality," "performance," and the "latest technology" held puffery); ; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973-74 (N.D. Cal. 2008) (claims of "superb, uncompromising quality," "faster, more powerful and more innovative," "higher performance," and "faster access to data" held puffery) (citations omitted), *aff'd*, 322 Fed. App'x 489 (9th Cir. 2009).

1   that they had been misled as to the iPhone's antenna or were otherwise dissatisfied with their
2   iPhone, they had only to return it.

### 2. Risk, Complexity, Duration, and Expense of Further Litigation

This would have been lengthy and hard-fought litigation. Plaintiffs would have been required to engage in substantial additional preparation and discovery. Among other things, plaintiffs would have been required to review a large volume of documents; depose numerous witnesses; prepare and present documentary evidence; and identify, prepare and present expert reports and testimony. And Settlement Class Members would likely have received no benefit had the case gone to trial given the weakness of the claims. Indeed, given the free bumper and refund program, the case might well have been disposed of by early summary judgment.

### 3. Likelihood of Maintaining Class Certification

Given that the overwhelming majority of iPhone 4 owners will never experience the alleged antenna issue, plaintiffs would not have been able to certify a litigation class. *Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741 WQH (NLS), 2007 U.S. Dist. LEXIS 12715, *39-41 (S.D. Cal. Feb. 22, 2007) (class cannot be certified where majority of class members' computers did not fail); *see also Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010); *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562, *18-19 (N.D. Cal. Dec. 17, 2009).

Moreover, individual, not common, issues predominated, precluding class certification. Individual proof would have been required regarding, among other issues, how each purported class member held the phone, whether he or she actually experienced the alleged attenuation, whether attenuation led to any increased number of dropped calls, and whether he or she would have purchased a case (thereby eliminating any potential for attenuation to affect a call) in any event. Apple's decision to make a free bumper or full refund available to all purchasers established a further bar to any purported class member's ability to demonstrate injury, and created individual issues that overwhelm any possible common issues (individual issues include whether each purported class member took advantage of the bumper or return option and, if not, why not). Plaintiffs could not have come close to satisfying the requirement articulated by the

United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011), that not only must there be common questions, but those questions must be susceptible to proof of a single answer as to all class members.

### 4. Settlement Value

The settlement properly reflects the relief already offered by Apple and offers cash relief to the only group of Settlement Class Members whose claims plaintiffs contended were not resolved by the availability of the free bumper or full refund. Thus, the settlement provides a $15 cash payment to Settlement Class Members who were not willing to use a case. The settlement also provides direct notice of the availability of a free bumper and assures the extension of the bumper program until eighteen months after the last sale of an iPhone 4. The settlement is precisely tailored to the facts and realities of the case.

### 5. Extent of Discovery and Stage of the Proceedings

As discussed above, Apple provided plaintiffs with extensive pre-mediation discovery. (Preovolos Decl. ¶ 2.) Plaintiffs had more than ample information to evaluate the strength of the case, as well as the reasonableness and adequacy of the settlement.

### 6. The Experience and Views of Counsel

Experienced counsel for both parties recommend approval of the settlement.

### 7. The Reaction of Settlement Class Members

As discussed above, class notice was disseminated by direct e-mails to approximately 15.7 million potential class members and was published in *USA Today* and *Macworld*. Yet, at the time of this filing, only nine objections have been filed. Those objections represent approximately 0.000033% of the total units sold, or 0.000057% of those who were sent direct notice. Only seventy-three Settlement Class Members (or approximately 0.00027% of the total units sold, or 0.00046% of those who were sent direct notice) have opted out. The class response compellingly demonstrates that the settlement is fair, reasonable, and adequate.

### 8. The Settlement is the Product of Arm's-Length Negotiations

The settlement here is the product of extensive arm's-length negotiations among well-informed, sophisticated counsel. Both sides have demonstrated that they were fully prepared to

litigate this case through final judgment if no acceptable resolution could be reached. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985) (stating that "[b]efore approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties").

Moreover, counsel participated in extensive settlement discussions facilitated by Judge Weinstein and Ms. Yanni, further demonstrating the non-collusive nature of the settlement. *See In re Apple Inc. Secs. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685, *10 (N.D. Cal. May 17, 2011) ("Because the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length, the Court is satisfied that the settlement is not the product of collusion."); *Hughes v. Microsoft Corp.*, No. C 98-1646C, 2001 U.S. Dist. LEXIS 5976, *17 (W.D. Wash. Mar. 21, 2001) (settlement mediated with assistance of appointed settlement judge demonstrates lack of fraud or collusion). The parties engaged in three full days of hard-fought and contentious in-person mediation with extensive conference calls between mediations. They spent a fourth full day session documenting the settlement. The parties did not discuss fees until all material terms of the settlement were agreed upon. Moreover, all fee discussions were conducted by the mediators; the parties did not negotiate fees directly.

## IV.      CONCLUSION

The proposed settlement is fair, reasonable, and adequate. It appropriately reflects the legal realities of plaintiffs' case, the relief provided by Apple prior to settlement, and provides benefits that are well-tailored to the claims alleged by the class. Apple respectfully requests that the Court approve the settlement and enter final judgment.


Dated: June 1, 2012         PENELOPE A. PREOVOLOS
                            ANDREW D. MUHLBACH
                            ALEXEI KLESTOFF
                            MORRISON & FOERSTER LLP


                            By:  */s/ Penelope A. Preovolos*
                                 Penelope A. Preovolos

                                 *Attorneys for Defendant*
                                 APPLE INC.