1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    (PPreovolos@mofo.com)
2   ANDREW D. MUHLBACH (CA SBN 175694)
    (AMuhlbach@mofo.com)
3   ALEXEI KLESTOFF (CA SBN 224016)
    (AKlestoff@mofo.com)
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:  415.268.7000
6   Facsimile:  415.268.7522

7   *Attorneys for Defendant*
    APPLE INC.

8

**FILED**

**JUN 2 9 2012**

RICHARD W. ~~ ~~ ~~ ~~
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13                                          Case No. 5:10-md-02188-RMW

14   IN RE APPLE IPHONE 4 PRODUCTS          **DEFENDANT'S RESPONSE IN**
     LIABILITY LITIGATION                    **OPPOSITION TO OBJECTIONS**
15                                           **TO THE PROPOSED**
                                             **SETTLEMENT**
16
                                            Date:  July 13, 2012
17                                          Time:  9:00 a.m.
                                            Place:  Courtroom 6
18                                          The Honorable Ronald Whyte

19

20

21

22

23

24

25

26

27

28

Defendant's Response in Opposition to Objections to Proposed Settlement
No. 5:10-md-02188-RMW

1

**TABLE OF CONTENTS**

2
                                                                                                    **Page**

3   TABLE OF AUTHORITIES ......................................................................................................ii

4   I.      INTRODUCTION ............................................................................................................ 1

    II.     RESPONSE OF THE SETTLEMENT CLASS ............................................................... 2
5
    III.    RESPONSE TO OBJECTIONS ...................................................................................... 3
6
            A.      Overview ............................................................................................................. 3
7
            B.      Response to Professional Objector Joseph Palmer (Alison Paul) ........................ 5
8           C.      Response to Professional Objector Thomas L. Cox, Jr. (Frank Aldridge,
                    John Davis, Jenny Dowdy, Larry Lavine, Paige Nash, Katie Sibley, Warren
9                   Sibley and David Stevens) ................................................................................... 6

10          D.      Response to Objector Bert Chapa ........................................................................ 8

            E.      Response to Objector Michael J. Schulz .............................................................. 9
11
            F.      Response to Objector Burke Fort ......................................................................... 9
12          G.      Response to Objectors Karabeth Bigford, Brittany Davis, Charles Farnum,
                    Tonia Johnson, Gregg Salomon, Wesley Sullivant, and Abhishek Tripathi ........ 10
13
    IV.     CONCLUSION ............................................................................................................... 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Berger v. Property ID Corp.*,
    No. 2:05-cv-05373 (C.D. Cal. Jan. 5, 2009) ................................................5 n.5

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir. 1974) ................................................................2

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................10

*Cnty. of Santa Fe v. Pub. Serv. Co.*,
    311 F.3d 1031 (10th Cir. 2002) ..........................................................10

*Collins v. Am. Honda Motor Co.*,
    No. RG 03099677, 2006 WL 4103767 (Cal. Super. Dec. 28, 2006) .................5 n.7

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...........................................................3 n.3

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010) ......................................................6 n.9

*Fulford v. Logitech, Inc.*,
    No. 08-cv-02041 MMC,
    2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) .....................3, 10, 11

*Gemelas v. The Dannon Co.*,
    No. 1:08-CV-236 (ECF No. 96) (N.D. Ohio, Aug. 31, 2010) ........................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    MDL No. 08-01998, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010) ......6 n.9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    33 F.3d 29 (9th Cir. 1994) ................................................................8

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010) ...................................................6 n.9

*In re Lifelock, Inc. Mktg & Sales Practices Litig.*,
    MDL No. 08-1977, 2009 U.S. Dist. LEXIS 130075 (D. Ariz. July 24, 2009) ........6 n.9

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ........................................................................................... 2, 3

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007)............................................................................... 8

*In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.,*
   MDL No. 08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010) ..................... 6 n.9

*In re Visa Check/Mastermoney Antitrust Litig.,*
   297 F. Supp. 2d 503 (E.D.N.Y. 2003),
   *aff'd*, 396 F.3d 96 (2d Cir. 2005) ....................................................................................... 2

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ............................................................................................ 11

*Petrovic v. Amoco Oil Co.,*
   200 F.3d 1140 (8th Cir. 1999).......................................................................................... 2-3

*Rodriguez v. West Publ'g Corp.,*
   No. CV-05-3222, 2007 WL 3165661 (C.D. Cal., Sept. 10, 2007),
   *aff'd*, 563 F.3d 948 (9th Cir. 2009) ................................................................................. 5 n.7

*TBK Partners, Ltd v. W. Union Corp.,*
   675 F.2d 456 (2d Cir. 1982) ............................................................................................ 3 n.3

*The Authors Guild, Inc. v. Google, Inc.,*
   No. 05-CV 8136, 2009 WL 2980745 (S.D.N.Y. Sept. 8, 2009) ....................................... 5 n.7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................................. 2

*White v. Experian Info. Solutions, Inc.,*
   No. SACV-05-1070 DOC, 2011 WL 2971836 (C.D. Cal., July 15, 2011)......................... 5 n.7

## I.       INTRODUCTION

This settlement was met with overwhelming approval. The Settlement Class consists of approximately 27.1 million iPhone 4 owners, 15.7 million of whom were sent direct notice of the settlement. Yet only 21 people filed objections, just 0.000077% of the Settlement Class and 0.00013% of those sent direct notice. And only 94 people opted out, just 0.00035% of the Settlement Class and 0.0006% of those sent direct notice. Neither the U.S. Attorney General nor a single state attorney general objected. These are powerful indicia that the settlement is fair, reasonable, and adequate and deserves final approval.

Moreover, the response of the Settlement Class confirms Apple's position throughout the litigation that very few iPhone 4 owners ever experienced the alleged antenna issue and that Apple eliminated the issue when it offered free bumpers shortly after the phone's release. Of the 21 objectors, nine are represented by two professional attorney objectors. These professional objectors' boilerplate objections do not even mention the antenna issue or assert that their clients experienced the issue. Two of the remaining objections are in fact *pro*-Apple, arguing that there was no issue with the phone or the antenna and that Apple's bumper program fully addressed any possible customer concerns. As one of these objectors writes:

> Apple's only transgression in the design of the iPhone 4 antenna was to unwittingly provide a physical demarcation point on the device at which the human hand most readily causes signal attenuation. . . . The iPhone 4's reception performance is excellent. . . . [I]n switching to the iPhone 4 from earlier models, I *gained* reception where it was previously unavailable to me.[1]

Another pro-Apple objection observes that Apple had already "taken actions to alleviate concerns of any potentially unsatisfied customers" and that the lawsuit against Apple was baseless.[2] Of the remaining ten objectors, only three even assert that they experienced the alleged antenna issue, and none of these three objectors indicates that he or she tried using a bumper or case. Notably, *no* objector disputes that the bumper eliminates the alleged antenna issue.

---

[1] Objection of Michael Karlesky, Exhibit A to Declaration of Penelope A. Preovolos in Response to Objections ("Preovolos Decl.") at 2 (emphasis in original).

[2] Objection of Jordan D. Maglich, Esq., Preovolos Decl., Ex. B at 2.

1      As forth in Apple's Memorandum of Points and Authorities in Support of Final

2    Settlement Approval ("Final Approval Memorandum") and as the Settlement Class Members'

3    response confirms, the settlement is clearly "fair, reasonable and adequate."  The settlement

4    recognizes the relief that Apple has already provided and offers a cash payment for the remaining

5    small fraction of iPhone 4 owners who believe they experienced the alleged antenna issue but

6    were not willing to use a bumper or case.  The settlement also provides direct notice to Settlement

7    Class Members of the continuing availability of a free bumper.  The Court should overrule the

8    objections and approve the settlement.

9    **II.      RESPONSE OF THE SETTLEMENT CLASS**

10      The response of the Settlement Class was overwhelmingly positive.  Despite 15.7 million

11   notices sent directly to Settlement Class Members, only 21 filed objections – only 10 of which are

12   actual objections to the settlement – and only 94 opted out.  Ten objections represents just

13   0.000037% of the Settlement Class, and even 21 objections represents only 0.000077% of the

14   Settlement Class.  These infinitesimally small numbers make clear that the settlement is

15   "adequate:"

16              [A] certain number of objections are to be expected in a class action
              with an extensive notice campaign and a potentially large number
17              of class members.  *If only a small number of objections are*
              *received, that fact can be viewed as indicative of the adequacy of*
18              *the settlement.*

19   *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003)

20   (quotations and citation omitted), *aff'd*, 396 F.3d 96 (2d Cir. 2005); *accord In re Mego Fin. Corp.*

21   *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low number of objections supporting finding that

22   settlement was fair); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir.

23   2005) (18 objections out of 5 million class members is evidence of "overwhelming[] . . .

24   approval"); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803-04 (3d Cir. 1974) (approving

25   class settlement even though more than 20% of class objected); *Petrovic v. Amoco Oil Co.*, 200

26

27

28

1    F.3d 1140, 1152 (8th Cir. 1999) (approving settlement where objectors represented fewer than

2    4% of class).[3]

3         The fact that there are so few objectors and opt-outs also supports a finding that the

4    settlement is "fair and reasonable." *See In re Mego*, 213 F.3d at 459 ("The reaction of the class

5    members to the proposed settlement further supports the conclusion that the district court did not

6    abuse its discretion in finding that the Settlement was fair, adequate and reasonable."); *Fulford v.*

7    *Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 U.S. Dist. LEXIS 29042, at *12 (N.D. Cal. Mar. 5,

8    2010) ("In addition, of the approximately 82,091 Class Members to receive Notice, only 12

9    (0.015 %) objected and 10 (0.012 %) opted out. Such an overwhelmingly positive reaction of the

10   Class Members affected by the Settlement supports its approval.").

11   **III.    RESPONSE TO OBJECTIONS**

12        **A.    Overview**

13        As set forth in Apple's Final Approval Memorandum, shortly after the iPhone 4's release,

14   Apple eliminated the antenna issue by offering free bumpers; no objector disputes that the

15   bumper prevents any antenna issue from occurring. The present settlement recognizes the relief

16   that Apple has already provided and gives Settlement Class Members direct notice of the

17   continuing bumper program. Finally, the settlement offers a cash payment for Settlement Class

18   Members who believe they experienced the alleged antenna issue but who were not willing to use

19   a bumper or case. The cash payment appropriately reflects that the alleged harm – the mere

20   inconvenience of using a bumper or case – is slight. The settlement is "fair, reasonable and

21   adequate."

22        The objections to the settlement are telling in their lack of substance. Only three of the

23   objectors even colorably assert that they experienced the alleged antenna issue. And none of

24   these three objectors claims to have tried using a bumper, let alone that it was not effective.

25   _____

26        [3] Indeed, courts frequently approve settlements where the percentage of objections is
     many magnitudes greater than in this case. *See, e.g., TBK Partners, Ltd v. W. Union Corp.*, 675
     F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of approximately 56%

27   of class); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (approving settlement over
     objections of counsel purporting to represent almost 50% of class)

28

1    Indeed, *no* objector denies that using a bumper or case resolves the issue.  Rather, several

2    objectors argue that the bumper program should not "count" as part of the settlement.  These

3    objectors miss the point that the bumper eliminates any antenna issue, so that Settlement Class

4    Members who received a free bumper would have had no claim had the litigation continued.

5    Moreover, the settlement provides direct notice to Settlement Class Members of the availability

6    of a free bumper, and that the bumper program will remain available for eighteen (18) months

7    after Apple discontinues sales of the iPhone 4.

8         The two professional objectors, representing nine Settlement Class members, do not even

9    assert that any of their clients experienced the alleged antenna issue, nor do they address the

10   merits of *this* settlement.  Rather, they repeat boilerplate objections from other cases, including

11   two prior Apple cases.  Notably, in the Order Granting Final Approval of Settlement Agreement

12   and Release and Granting Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of

13   Expenses and Incentive Awards, *In re MagSafe Apple Power Adapter Litigation*, Case No. C09-

14   0911 JW (ECF No. 107) (N.D. Cal. Mar. 8, 2012) ("MagSafe Final Approval Order") (Preovolos

15   Decl. Ex. F), Judge Ware of this Court rejected the objections of both the professional objectors

16   here.  So too, as discussed in sections II.B-C below, have numerous other courts.  Moreover, as

17   set forth in greater detail below, their objections get the facts of the settlement wrong.

18        Two objectors are pro-Apple.  One, Michael Karlesky, writes:

19              As an engineer, I can attest to the simple fact that tradeoffs are
                always necessary in any product design.  Apple's chosen tradeoffs
20              seem to balance out overall product performance quite nicely.  On
                the whole, the iPhone 4's reception is excellent.  Further, all
21              cellular handsets necessarily experience antenna attenuation due to
                the placement of the human hand on the device.  This is a simple
22              reality of electromagnetic radiation in wireless communication
                devices and has been thoroughly documented among other mobile
23              phones . . . .

24              The iPhone 4's reception performance is excellent.  In fact, in my
                experience, it is much superior to earlier iPhone designs I have
25              personally owned.  That is, upon switching to the iPhone 4 from
                earlier models, I *gained* reception where it was previously
26              unavailable to me.[4]

27    _____
      [4] Preovolos Decl., Ex. A at 1-2.
28

1  Similarly, Mr. Maglich's pro-Apple response argues that the lawsuit was not necessary and that

2  Apple's bumper program addressed any possible antenna issue.[5]

3        The remaining objectors either assert problems with their phone separate from the antenna

4  or claim that the cash amount should be greater.  But the class settlement was never intended to

5  address other issues Settlement Class Members might believe they experienced with their phones.

6  And Settlement Class Members who object to the cash amount ignore the very limited

7  inconvenience (unwillingness to use a bumper or case) the cash payment was intended to address.

8  They also ignore the fact that a settlement is a compromise, not a win on the merits – particularly

9  in a case where plaintiffs could not conceivably have prevailed on the merits.

10       **B.      Response to Professional Objector Joseph Palmer (Alison Paul)**

11       Objector Alison Paul appears through counsel, Joseph Darrell Palmer.[6]  As discussed

12  below, Palmer's objection to the settlement is so thin as to be virtually nonexistent; he focuses

13  almost entirely on the propriety of plaintiff's fees.  Palmer is a professional objector, with a long

14  history of objecting to class action settlements and filing frivolous appeals when his objections

15  are overruled.[7]  Palmer has been expressly characterized as a "serial objector" by the court that

16  overruled his objection in a case involving the Dannon Company.  Memorandum of Opinion and

17  Order, *Gemelas v. The Dannon Co.*, No. 1:08-CV-236 (ECF No. 96), at *3 (N.D. Ohio, Aug. 31,

18  2010) ("*Dannon* Order.")  Palmer's boilerplate objections – similar to those here – were recently

19  overruled by Judge Ware in the MagSafe Final Approval Order (ECF No. 107).  Palmer also filed

20  similar boilerplate objections on behalf of his client here, Ms. Paul, in *Johnson v. Apple Inc.*,

21  where they were overruled by Judge Huber of the Santa Clara Superior Court earlier this year.[8]

22       [5] Preovolos Decl., Ex. B at 1-2.

23       [6] Preovolos Decl., Ex. C.

24       [7] *See, e.g.*, Preovolos Decl., Exs. D-G; *White v. Experian Info. Solutions, Inc.*, No. SACV-05-1070 DOC (MLGx), 2011 WL 2971836 (C.D. Cal., July 15, 2011); *The Authors Guild, Inc. v. Google, Inc.*, No. 05-CV 8136, 2009 WL 2980745 (S.D.N.Y. Sept. 8, 2009); *Berger v. Property ID Corp.*, No. 2:05-cv-05373 (C.D. Cal. Jan. 5, 2009) (ECF No. 897); *Rodriguez v. West Publ'g Corp.*, No. CV-05-3222, 2007 WL 3165661 (C.D. Cal., Sept. 10, 2007), *aff'd*, 563 F.3d 948 (9th Cir. 2009); *Collins v. Am. Honda Motor Co.*, No. RG 03099677, 2006 WL 4103767 (Cal. Super. Dec. 28, 2006).  Palmer focused on the proposed attorney's fees in each of these cases.

27       [8] Preovolos Decl., Ex. G.

28

1    Palmer's objection says almost nothing about the settlement and is largely devoted to

2  objecting to plaintiffs' fees.  While Apple defers to plaintiffs' counsel respecting their fees, Apple

3  notes that Palmer's objection that the fee petition was not filed before objections were due is

4  simply wrong.  The fee petition was filed on June 1, 2012 (ECF No. 52-3); objections were due

5  on June 15.

6    Moreover, Palmer does not state that his client ever experienced the alleged antenna issue,

7  or indeed, that she ever had any issue whatsoever with her phone.  His *sole* objection to the

8  settlement is that proof of class membership is "onerous."  But as Palmer concedes, Settlement

9  Class Members need only provide their address, telephone number, and the serial number of their

10  iPhone.  If they no longer have their iPhone and did not record the serial number, they can look it

11  up by clicking on a link on the settlement web site.  It is hard to imagine *less* "onerous"

12  requirements.  Palmer's suggestion that Settlement Class Members should simply be required to

13  sign a statement that they owned an iPhone is an invitation to rampant fraud.  Palmer's objections

14  to the settlement are meritless and should be overruled.

15    **C.    Response to Professional Objector Thomas L. Cox, Jr. (Frank Aldridge, John
16    Davis, Jenny Dowdy, Larry Lavine, Paige Nash, Katie Sibley, Warren Sibley
        and David Stevens)**

17    Cox is also a frequent and professional objector; he has objected or represented objectors

18  in at least seven other class actions since 2010, including the recent *In re Apple MagSafe Power*

19  *Adapter* settlement before Judge Ware.  Cox's objections were overruled in each of these cases.[9]

20  Indeed, Judge Ware overruled objections that were virtually identical to those asserted by Cox

21  here.  (Preovolos Decl. Ex. F.)

22

23

24    [9] *See* Preovolos Decl., Exs. F, I; *In re Tyson Foods, Inc., Chicken Raised Without*
25  *Antibiotics Consumer Litig.*, MDL No. 08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11,
    2010); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010); *In re Lawnmower*
26  *Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010); *In re*
    *Lifelock, Inc. Mktg & Sales Practices Litig.*, MDL No. 08-1977, 2009 U.S. Dist. LEXIS 130075
27  (D. Ariz. July 24, 2009); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, MDL
    No. 08-01998, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010).

28

1    Cox does not assert that any of his clients actually experienced the alleged antenna issue.[10]

2    Cox's objections are purely procedural, and are either ill-founded or simply mistaken.

3    Cox first asserts that notice is inadequate because key settlement documents should have

4    been posted on the settlement website. But in fact, they were: in addition to the full notice,

5    summary notice and claim form, the full Settlement Agreement and this Court's Preliminary

6    Approval Order were posted on the settlement website. That is, of course, more documents than

7    are typically posted on a settlement website. Further, Judge Ware rejected this precise argument

8    in the MagSafe Final Approval Order. Cox argues that existing case law regarding the documents

9    to be posted on a settlement website should be "expanded," but Cox's desire in this regard is

10   hardly a basis for rejecting the settlement.

11   Cox next argues that the Settlement Class is not objectively "ascertainable" but of course

12   it is: all United States residents who are or were owners of an iPhone 4 as of February 17, 2012.

13   This definition avoids precisely the problem identified in the cases Cox cites: defining the class

14   in terms of individuals who experienced the alleged harm (there, receipt of unauthorized

15   advertisements; here, having experienced the alleged antenna issue). In this case, all iPhone 4

16   owners are included in the Settlement Class and receive notice; they then can determine if they

17   experienced the alleged antenna issue and have the basis to make a claim. That is exactly what

18   class action settlement law requires. The cases Cox cites are inapposite and his argument makes

19   no sense here.[11]

20   Cox also purports to find an intraclass conflict where there is none. Cox argues that

21   Settlement Class Members who already received a bumper do not receive relief under the

22   settlement. But that is simply wrong: the settlement does *not* preclude Settlement Class

23   Members who obtained a bumper but were not satisfied with it from requesting the $15 cash

24   payment. Even if he were correct — which he is not — it is worth noting that Settlement Class

---

[10] Preovolos Decl., Ex. H.

[11] The cases Cox cites involve the Telephone Consumer Protection Act, not any of the statutes at issue here, presumably because he has copied this boilerplate objection from one he filed in a TCPA case.

1   Members who received a free bumper that resolved any antenna issue they allegedly experienced

2   have no injury, no claim, and no standing to sue or object.  Cox's argument that "subclasses"

3   must satisfy Rule 23's certification requirements is a non sequitur because there is no intraclass

4   conflict and hence no subclasses.

5        Cox also argues that the claims requirements are "needlessly complex" but does not and

6   cannot point to any particular requirement that he contends is inappropriate.  The claims

7   requirements are needed to ensure that only Settlement Class Members who actually experienced

8   the alleged antenna issue, followed basic "troubleshooting" steps and were unwilling to use a

9   bumper (which indisputably eliminates the issue) could claim the cash payment.  Moreover, Mr.

10  Cox's nine clients apparently have no trouble with the requirements, since he indicates that they

11  are all filing claims.  Finally, the only proof required is the serial number of the phone and that

12  the Settlement Class Member check a box indicating that he or she meets the requirements.  This

13  is hardly an onerous process.  Again, this is a boilerplate objection raised by Cox and rejected

14  with respect to other settlements, including the *In re MagSafe Power Adapter* settlement recently

15  approved by Judge Ware.

16      **D.   Response to Objector Bert Chapa**

17       Most fundamentally, Chapa does not allege that he ever experienced the alleged antenna

18  issue.[12]  Accordingly, he does not have standing to object.  *See In re First Capital Holdings*

19  *Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) ("[s]imply being a member of a class

20  is not enough to establish standing. One must be an aggrieved class member"); *In re Omnivision*

21  *Techs., Inc.*, 559 F. Supp. 2d 1036, 1044 (N.D. Cal. 2007) (no standing because objector/class

22  member suffered no injury).

23       In any event, Chapa's objections are meritless.  He first objects that the class definition

24  does not make clear if the "owner" in a gift situation is the purchaser or the recipient.  Chapa then

25  admits that he lacks standing to advance this objection, because he states that he purchased the

26  phone for his own use.  Moreover, the term "owner" *favors* the Settlement Class Members by

27  ―――――――――――――――
    [12] Preovolos Decl., Ex. J.

28

1   *broadening* who may make a claim.  If a gift recipient is the actual owner of the phone who

2   believes he experienced the antenna issue, he can make a claim.  Unlike many settlements, the

3   class is *not* limited to purchasers.  Chapa's next objection is simply foolish:  he complains

4   objections must be mailed via US Mail.  But there is no other way for Settlement Class Members

5   who are not ECF users to file objections.

6       Like Cox, Chapa objects that Settlement Class Members should not be required to have

7   experienced the antenna issue to make a claim; he argues that everyone who owns the phone

8   should be entitled to $15.  But Chapa is wrong for the same reason Cox is wrong:  Settlement

9   Class Members who did not experience the issue have no injury, had no claim in the litigation,

10   and have no standing to object.

11       Lastly, like other objectors, Chapa argues that the bumper should not be considered part of

12   the settlement but ignores the fact that the settlement notice informs Settlement Class Members of

13   the bumper program so that they can take advantage of it.  He also ignores the fact that Settlement

14   Class Members who received a free bumper that eliminated any alleged antenna issue have

15   received complete relief and have neither injury, standing to object, nor a claim in the litigation.

16       **E.   Response to Objector Michael J. Schulz**

17       Like Chapa, Schulz does not allege that he ever experienced an antenna issue, and hence

18   lacks standing to object.[13]  Also like Chapa and Cox, he objects that the claims process is overly

19   burdensome.  That objection should be rejected for the reasons discussed above with respect to

20   Cox and Chapa.  Shulz final objection is also identical to Chapa's – that the bumper program does

21   not "count" – and should be rejected for the same reasons.

22       **F.   Response to Objector Burke Fort**

23       Objector Fort, like Chapa and Schulz, does not allege that he ever experienced any

24   antenna issue; as such, he lacks standing to object.[14]  Fort's objection is that he "does not meet the

25   claim requirements" but that he loses his claim anyway.  Fort does not say why he does not meet

26   _____

27       [13] Preovolos Decl., Ex. K

       [14] Preovolos Decl., Ex. L.

28

1    the claim requirements:  presumably he did not experience the alleged antenna issue.  But if that

2    is so, he had no claim in this lawsuit in any event.  Moreover, Fort was free to opt out and retain

3    any claim he may have had.

4    **G.    Response to Objectors Karabeth Bigford, Brittany Davis, Charles Farnum,
         Tonia Johnson, Gregg Salomon, Wesley Sullivant, and Abhishek Tripathi**

5

6    Objectors Bigford, Davis, Farnum, Johnson, Salomon, Sullivant and Tripathi all make the

7    same basic objection:  they contend that $15 is not a sufficient dollar amount.[15]  But

8    compromise — not what these objectors hoped to achieve if they prevailed on the merits — is the

9    essence of settlement.  Further, these objectors ignore the free bumper program, which prevents

10   any antenna issue from occurring.  Accordingly, the amount of the cash payment for owners who

11   were not willing to use a bumper appropriately reflects that the only remaining alleged harm —

12   the mere inconvenience of using a bumper — is very slight.

13   There is a strong judicial policy in favor of settlement in the class action context.  *Fulford*,

14   2010 U.S. Dist. LEXIS 29042, at *5 (citing *Manual for Compl. Litig.*, Fourth § 30.42 (2004)

15   ("'[T]he interests of the class as a whole are better served if the litigation is resolved by the

16   settlement rather than pursued.'").  The very nature of a settlement is compromise in the interest

17   of expeditious and cost-effective conclusion of the litigation.  *See Class Plaintiffs v. City of*

18   *Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ("[I]t is the very uncertainty of outcome in litigation

19   and avoidance of wasteful and expensive litigation that induce consensual settlements.")

20   (quotations and citation omitted); *see also Cnty. of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031,

21   1053 (10th Cir. 2002) ("The premise of a settlement and compromise is that each party has an

22   arguable position that it agrees to give up in exchange for expeditious, inexpensive, and amicable

23   resolution of the matter.").

24   Consistent with the premise of settlement and compromise, each party to a settlement

25   necessarily receives less than what he or she *may* have obtained *if* he or she ultimately prevailed

26   on the merits.  *See City of Seattle*, 955 F.2d at 1291 (uncertainty of litigation induces consensual

27   _____
     [15] Preovolos Decl., Exs. M – S.

28

1    settlements); *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8 (inherent risks in litigation considered

2    in assessing fairness of settlement); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

3    1998) ("Of course it is possible . . . that [a] settlement could have been better. But this possibility

4    does not mean [a] settlement presented [is] not fair, reasonable or adequate.").

5         Further, objections based on the merits of the claim should be disregarded. *See Officers*

6    *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he settlement or

7    fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."). In any event,

8    no objector even attempts to argue that the settlement is not appropriate in light of the merits of

9    the case. As Apple explained in its Final Approval Memorandum, had the litigation continued,

10   Apple would have shown that the vast majority of Settlement Class Members would never

11   experience the alleged antenna issue and, in any event, Apple eliminated any possible claim with

12   its bumper program. (Final Approval Memorandum, ECF No. 53, at 9)  Further, plaintiffs'

13   "defect" claim was meritless, as demonstrated by the high level of customer satisfaction,

14   extremely small number of complaints and returns, and low number of dropped calls. (*Id.*)

15   Similarly, plaintiffs could point to virtually no representations respecting the antenna, let alone

16   actionable misrepresentations. (*Id.* at 10)  Indeed, it is highly unlikely that the vast majority of

17   class members were exposed to *any* representation regarding the antenna. (*Id.*)  Finally, given

18   that the overwhelming majority of class members would never experience the alleged antenna

19   issue, plaintiffs would not have been able to certify a settlement class. (*Id.* at 11)  A host of

20   individual issues also precluded class certification. (*Id.*)  The cash amount is clearly reasonable in

21   light of the severe weaknesses of the claims.  It also appropriately reflects the undisputed fact that

22   the free bumpers eliminate any alleged antenna issue, so that the cash payment is compensation

23   solely for the minor inconvenience of using a bumper or case.

24        Several of these objectors also base their objection on what they *hoped* to recover if they

25   prevailed on the merits, or on individual issues unrelated to the antenna that they allegedly

26   experienced with their phones. Thus, objector Johnson claims to have experienced an unspecified

27   "problem" with her phone and argues that she should be entitled to a new phone. Objector

28   Salomon claims that he had problems receiving a signal at his home and had to purchase a "signal

1   extender" for his home; he also contends that he is entitled to a new phone. Objector Farnum

2   claims that he experienced "a lot of problems" with his phone (he does not indicate that any of

3   those problems related to the antenna). He contends that he should therefore receive an amount

4   greater than $15, which should include compensation for his time and expense in traveling to the

5   store to seek repairs. But the nature of a settlement is compromise, and failure to grant individual

6   Settlement Class Members the relief they desire is not grounds for disapproving the settlement.

7   The settlement does not purport to address unique, individual alleged problems with particular

8   Settlement Class Members' phones or their particular theories of consequential damages, nor is it

9   required to do so. Furthermore, these objectors, and any who share their views, were free to opt

10   out and pursue individual remedies.

## IV.   CONCLUSION

12         The proposed settlement is fair, reasonable and adequate. It appropriately reflects the

13   legal and factual weaknesses of the case, the relief provided by Apple before the settlement, and

14   the minor harm addressed by the cash payment — the mere inconvenience of using a bumper.

15   The settlement benefits are well-tailored to the facts and circumstances of the class. The

16   miniscule percentage of objections and opt-outs is compelling evidence that the settlement is fair,

17   reasonable and adequate. The objections themselves are boilerplate, ill-founded, and ignore the

18   realities of the lawsuit and the settlement. Apple respectfully requests that the Court overrule the

19   objections and grant final approval of the proposed settlement.

Dated: June 29, 2012

PENELOPE A. PREOVOLOS
ANDREW D. MUHLBACH
ALEXEI KLESTOFF
MORRISON & FOERSTER LLP

By: _Penelope A. Preovolos_
     Penelope A. Preovolos

*Attorneys for Defendant*
APPLE INC.

sf-3160967