ECF DOCUMENT

I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Northern District of California.

Date Filed: 9/10/2012

RICHARD W. WIEKING, Clerk

By: _Betty Walton_ , Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CASE NO. 5:10-md-2188 RMW

**ORDER GRANTING MOTION FOR
FINAL SETLLEMENT APPROVAL;
GRANTING IN PART AND DENYING IN
PART PLAINTFFS' REQUEST FOR
ATTORNEYS' FEES AND COSTS**

IN RE APPLE IPHONE 4 PRODUCTS
LIABILITY LITIGATION

Plaintiffs and defendant Apple, Inc. ("Apple") move jointly for final approval of a class

action settlement. Plaintiffs separately request approval of an award of $5.9 million in attorneys'

fees, expenses and incentive fees for class representatives. For the reasons below, the court grants

the motion for approval of the settlement. The court approves an attorneys' fees award of

$2,163,292.50, the amount of plaintiffs' counsel's documented lodestar with no multiplier, along

with $126,926.43 in expenses and a $500 incentive fee per class representative.

## I. BACKGROUND

Plaintiffs brought this consolidated nationwide class action on behalf of "all persons who

purchased an iPhone 4 in the United States between June 24, 2010 and the date of final approval."

Broadly speaking, the suit sought relief under state consumer protection laws for injuries allegedly

resulting from an antenna defect that impacts the iPhone 4's cellular network reception.

1    On January 24, 2012, after Apple had produced substantial discovery but before the filing

2  of any dispositive motions, the parties reached a settlement agreement (the "Agreement").  Two

3  mediators, the Honorable Daniel Weinstein and Catherine Yanni, Esq of JAMS, supervised four

4  mediation sessions leading to the settlement.  The court preliminarily approved the agreement on

5  February 17, 2012.

6  **A.    Notice**

7    Following preliminary approval, the claims administrator sent e-mail notice to 15.7 million

8  class members, the number of eligible iPhone 4 purchasers for whom Apple retained email

9  addresses.  *See* Dkt. No. 53 at 6.  Notice was also published in the April 2, 2012 edition of *USA*

10  *Today* and the May 2012 issue of *Macworld*.  *Id.*  As Apple sold 27.1 million iPhone 4s in the U.S.

11  during the settlement period, the parties estimate the size of the class to be between 15.7 million

12  and 27.1 million, depending on the number of potential class members who purchased more than

13  one iPhone 4.

14  **B.    Settlement Terms**

15    The agreement provides that: (1) any class member who files a claim form before August

16  28, 2012 is eligible to receive a cash payment of $15; (2) Apple will extend its "free bumper

17  program"[1] for 18 months following discontinuation of the sale of the iPhone 4; and (3) Apple will

18  not oppose a request for attorneys' fees up to $5.9 million.

19  **C.    Claims, Opt-Outs and Objections**

20    As of June 29, 2012, approximately 44,000 class members had filed claims for monetary

21  recovery, 94 potential class members had opted out of the settlement, and 21 class members had

22  filed objections.  The number of claims represents somewhere between 0.16% and 0.28% of the

23  total class, for a total cash recovery of approximately $660,000.  None of the objectors appeared at

24  the final approval hearing.

25

26    [1]   Bumpers are rubber cases for the iPhone that fix the alleged reception problem.  Plaintiffs
   allege that Apple initiated the "free bumper program," pursuant to which the company offered all
27  iPhone 4 purchasers a complimentary bumper, around July 16, 2010.  *See* Dkt. No. 14
   (Consolidated Class Action Complaint) ¶ 139.  It is not clear when Apple would have ended the
28  free bumper program absent this settlement.

## II. ANALYSIS

**A.     Approval of the Settlement Agreement**

On a motion for approval of a class action settlement, the court must assure itself that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* Instead, in analyzing the fairness of the settlement, courts in the Ninth Circuit consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining a class action; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

**1.    *Churchill* Factors**

Here, the *Churchill* factors weigh largely in favor of approval.  Plaintiffs had potentially valid claims, but were likely to face significant hurdles on class certification (since some putative class members did not experience reception problems) and the merits (since it is not clear that the iPhone 4 is "defective" or that Apple made actionable misrepresentations).  Further litigation would have certainly involved substantial time and discovery.  Apple provided a large amount of discoverable material before the settlement, giving plaintiffs ample information to use in evaluating the strength of their case.  The parties were represented by sophisticated counsel and negotiated with very experienced mediators.  The mediators submitted a declaration reflecting their belief that the settlement is a "fair, reasonable and adequate compromise, considering all of the relevant issues." Dkt. No. 58-1, Ex. A ¶ 3.  In addition, the small number of opt-outs and objections (115 in total) relative to the size of the class (at least 15.7 million) supports approval. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (18 objections

1  out of five million notices shows that "the class appears to be overwhelmingly in favor" of the

2  settlement).

3      On the other hand, the small number of claims suggests that the relief obtained by

4  plaintiffs is not of great significance to most class members, particularly in light of the large

5  number of individuals who ostensibly received direct e-mail notice.  Relatedly, the court finds that

6  plaintiffs' valuation of the settlement, which includes the retail value of approximately 2.6 million

7  free bumpers distributed by Apple between July 2010 and the date of the final approval hearing—

8  a total of more than $75 million—is overstated.  Although plaintiffs claim the lawsuit was the

9  "catalyst" for the free bumper program, they offer no evidence supporting this assertion or

10  showing that Apple would not have initiated the program in the absence of litigation.[2]  In addition,

11  while the extension of the free bumper program clearly offers some value to the class, it is

12  uncertain how many class members will take advantage of this provision.  In fact, at oral

13  argument, the parties conceded that there was a low claims rate, which they attributed to the fact

14  that the overwhelming majority of iPhone 4 users already have cases that solve the alleged

15  reception problem.  The court therefore notes that while the true value of the settlement is difficult

16  to ascertain, it appears much closer to the actual monetary recovery of $660,000 than plaintiffs'

17  estimate of "over $75 million."  Dkt. No. 521-1 at 13.  Nevertheless, the court does not find the

18  settlement to be unfair or inadequate, particularly since class members were offered a choice of

19  either cash or a case that *undisputedly* fixes the alleged defect.

20      **2.  Objections**

21      The court also finds that except for the objection to the size of the attorneys' fees request,

22  which is addressed below, the objections are not well-taken.  First, several objectors contend that

23  $15 is insufficient to compensate them for their injuries.  These objectors provide no further

24  explanation of the injury they suffered, and only two suggest alternative forms of relief: new

25  Apple products.  The Ninth Circuit has cautioned that "settlement is the offspring of compromise;

26  _____

27  [2]   The complaint indicates that Apple initiated the "free bumper program" after receiving a torrent of negative publicity related to the iPhone 4's reception issues and an "open letter" from New York Senator Charles Schumer asking Apple to "remedy [the reception problem] free of

28  charge."  *See* Dkt. No. 14 at ¶¶ 112-39.

1    the question we address is not whether the final product could be prettier, smarter or snazzier, but

2    whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

3    1027 (9th Cir. 1998).  Furthermore, if any objector believed that "his or her personal claim was

4    being sacrificed for the greater good … they had the right to opt-out of the class." *Id.*  Put another

5    way, without more, objections seeking a "better" result are not sufficient to overturn a settlement

6    agreement.

7        Other objectors complain that the claims process was overly burdensome.  The court

8    disagrees.  Class members were required to provide only their name, address and iPhone serial

9    number and to check a box verifying their reception problems in order to file a claim, and could do

10   so by mail or electronically.  A class member's name and address are necessary in order to provide

11   him or her with a $15 check, and the serial number requirement is a reasonable measure to avoid

12   fraud.

13       Another group of objectors—represented by attorneys who regularly represent objectors to

14   class action settlements—argue without citation to authority that the court should require "all

15   relevant court documents" to be posted on the settlement website.  Given that key documents,

16   including the court's preliminary approval order and the settlement agreement itself, are available

17   on the website and that direct e-mail notice was sent to nearly 16 million people, the court finds

18   this objection to be without merit.

19       These same objectors also contend that the class is "unascertainable" because the court will

20   be "required to conduct an individual inquiry to determine whether [each member] had antenna

21   trouble."  Dkt. No. 55 at 4.  However, as Apple has agreed to provide relief to any putative class

22   member who files a claim form, no such inquiry is required.  *Compare Forman v. Data Transfer*,

23   164 F.R.D. 400, 403 (E.D. Pa. 1995) ("Defining the purported class as 'all residents and

24   businesses who have *received unsolicited facsimile advertisements*' requires addressing the central

25   issue of liability to be decided in the case. Determining a membership in the class would

26   essentially require a mini-hearing on the merits of each case.") (emphasis in original).  This

27   objection is therefore rejected.

28

1   Accordingly, the court concludes that the settlement is fair, reasonable, and adequate, and

2   grants the motion for final approval of the settlement agreement.

3   **B.    Attorneys' Fees, Expenses and Incentive Awards**

4   In a class action lawsuit, the court may award reasonable attorney's fees and nontaxable

5   costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Where, as

6   here, California law claims predominate, California law governs the award of fees. *Vizcaino v.*

7   *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In general, the starting point of every fee

8   award is the "lodestar" method. *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26

9   (Cal. Ct. App. 2000). "A trial court has discretion to adjust the basic lodestar through the

10  application of a positive or negative multiplier where necessary to ensure that the fee awarded is

11  within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at

12  49-50. A credible measure of the "market value" of the legal services provided is the "percentage-

13  of-the-benefit" analysis. *Id.* In addition, the lodestar calculation "may be adjusted upward or

14  downward to account for several factors including the quality of the representation, the benefit

15  obtained for the class, the complexity and novelty of the issues presented, and the risk of

16  nonpayment." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

17  Plaintiffs' counsel ("Counsel")—which include lawyers from twenty-three different law

18  firms—request $5.9 million in attorneys' fees. This amount is equal to their combined lodestar

19  with a 2.1x multiplier. *See* Rothken Decl. ¶ 25-27. Not surprisingly, it is also the largest amount

20  to which Apple agreed not to object under the terms of the settlement. Nearly every objector, on

21  the other hand, did object to the size of the attorneys' fees request.

22  While the court finds that the use of the lodestar method is appropriate, the 2.1x multiplier

23  is not justified in this case. First, the lodestar calculation is very generous in that it includes the

24  time of a multitude of attorneys (more than necessary to efficiently handle the case) at high end

25  rates and based upon what appear to be liberally-kept time records. Second, the action involved

26  *no* motion practice. In addition, while counsel brought this action on a contingent basis, thus

27  incurring the risk of non-payment, the large number of firms competing to represent plaintiffs

28  suggests that such a risk was relatively low. *See Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th

819, 835 (Cal. Ct. App. 2001) ("[T]he astonishing speed of the race to the courthouse by such an extraordinary number of lawyers reflects their confidence they would not only prevail on the merits but be remunerated for their efforts."). Finally, as noted above, the relief provided by the settlement did not achieve a significant benefit for the class, as evidenced by the low claim rate and counsel's concession that most class members had already solved the problem addressed by this lawsuit. *See Yeagley v. Wells Fargo & Co.*, No. 05-03403 CRB, 2010 WL 2077013, at *4 (N.D. Cal. May 20, 2010) (considering the low participation rate and lack of enthusiasm from the class as factors to be considered in determining a fee award). The court is not convinced that the lawsuit was the main impetus for the bumper program, and counsel's emphasis on the initiation of that program as an "element" of the settlement is unpersuasive.

Counsel argue that the court should give deference to the facts that Apple agreed not to oppose the fees request and that the fees were negotiated independently of the award to the class. However, "[t]hat the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award. Ordinarily, a defendant is interested only in disposing of the total claim asserted against it ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense...." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Evans v. Jeff D.*, 475 U.S. 717, 733-34 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorney's fees" is often implicit in class action settlement negotiations, because "[m]ost defendants are unlikely to settle unless the cost of the predicted judgment, discounted by its probability, plus the transaction costs of further litigation, are greater than the cost of the settlement *package*") (emphasis added).

Accordingly, the court declines to apply the requested multiplier. The court awards $2,163,292.25 in fees, the amount of counsel's combined lodestar calculation as detailed in their declarations.[3] Although the court finds the lodestar generously computed, counsel should be

---

[3]   Counsel seek an additional $645,729.25 in fees and $13,749.79 in expenses for non-lead plaintiffs' attorneys, but do not provide support for such a request. *See* Rothken Decl. ¶ 26 (noting simply that co-lead counsel had "received" non-lead plaintiffs' counsel's lodestar calculation). The

complimented and credited for resolving the case without court involvement and protracted litigation.  The court also awards $126,926.43 in expenses, and a $500 incentive payment for each class representative.

It is so ordered.

DATED:  August 10, 2012

_Ronald M. Whyte_

Ronald M. Whyte
United States District Judge

court therefore denies this request without prejudice to a properly supported request filed at a later date.

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28