Name _Bert Chapa_
Address _5209 Tartan Drive_
City, State, Zip _Corpus Christi, Texas 78413_
Phone _361-779-9153_
Fax ___
E-Mail ___
☐ FPD   ☐ Appointed   ☐ CJA   ☒ Pro Per   ☐ Retained

**Filed**

SEP 10 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| In Re Apple iPhone Products Liability Litigation | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | 5:10-md-02188-RMW |
| v. | |
| DEFENDANT(S). | **NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____Bert Chapa_____ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Order Granting Motion for Final Settlemen

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _August 10, 2012_. Entered on the docket in this action on _August 10, 2012_.

A copy of said judgment or order is attached hereto.

September 4, 2012
Date

Signature
☒ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

Note: The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                                    NOTICE OF APPEAL

# IN RE APPLE IPHONE4 PRODUCT LIABILITY LITIGATION
## CASE NO. 5:10-md-02188-RMW
### LIST OF PARTIES

Penelope A. Preovolos
Andrew D. Muhlbach
Alexei Klestoff
Morrison & Foerster, LLP
425 Market Sreet
San Francisco, CA 94105-2482
T: 415-268-700
F: 415-268-7522
*Defendant's Attorney*

Ira P. Rothken
Rothken Law Firm
3 Hamilton Landing, Ste. 280
Novato, CA 94949
*Class Counsel*

Jennifer Sarnelli
Gardy & Notis LLP
560 Sylvan Ave
Englewood Cliffs, NJ 07632
*Class Counsel*

Stuart A. Davidson
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Rd, Ste. 500
Boca Raton, FL 33432
*Class Counsel*

Behram V. Parekh
Kirtland & Packard LLP
2041 Rosecrans Ave, 3rd Fl.
El Segundo, CA 90245
Class Counsel

Tonia Johnson
14816 Flowler School Rd.
Marion, IL 62959
*Objector*

Abhishek Tripathi
3365 115th Ave. NE, Apt. 231
Bellevue, WA 98004
T: 408-505-9206
*Objector*

Gregg Salomon
23541 Lipari
Laguna Hills, CA 92653
T: 415-828-85=646
Email: greggsalomon@yahoo.com
*Objector*

Charles L. Farnum
414 Rue Des Yours
Mary Esther, FL 32469-2342
*Objector*

Karabeth J. Bigford
431 West 1st Ave, #203
Columbus, OH 43201
T: 941-830-3555
*Objector*

Wesley Sullivant
3316 Fairlane Ave
Paducah, KY 42001
·T: 270-564-1423
*Objector*

Jordan D. Maglich
2225 Soho Bay Ct.
Tampa, FL 33606
T: 813-347-5100
*Objector*

1

Michel Karlesky
80 Woodruff Ave, Apt. # 6G
Brooklyn, NY 1226-1271
T: 616-334-0169
*Objector*

Birttany Davis
82 Cypress Point Dr.
Charles Town, WV 25414
*Objector*

Thomas L. Cox, Jr.
The Cox Firm
4934 Tremont
Dallas, TX 75214
T 469-531-3313
Email: tcox009@yahoo.com
*Objector*

Burke O'Hara Fort
3206 Gilbert St.
Austin, TX 78703
T: 512-479-6159
*Objector*

Michael J. Schulz
4N600 Powis
Wayne, IL 60184
*Objector*

Joseph Darrell Palmer
Law Offices of Darrell Palmer
603 North Hwy 101, Ste. A
Solana Beach, CA 92075
T: 858-792-5600
F: 858-792-5655
Darrell.palmer@palmerlegalteam.com
*Attorney for Objector Alison Paul*

Case5:10-md-02188-RMW   Document66   Filed08/10/12   Page1 of 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE APPLE IPHONE 4 PRODUCTS LIABILITY LITIGATION | CASE NO. 5:10-md-2188 RMW<br><br>**ORDER GRANTING MOTION FOR FINAL SETLLEMENT APPROVAL; GRANTING IN PART AND DENYING IN PART PLAINTFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS** |

Plaintiffs and defendant Apple, Inc. ("Apple") move jointly for final approval of a class action settlement. Plaintiffs separately request approval of an award of $5.9 million in attorneys' fees, expenses and incentive fees for class representatives. For the reasons below, the court grants the motion for approval of the settlement. The court approves an attorneys' fees award of $2,163,292.50, the amount of plaintiffs' counsel's documented lodestar with no multiplier, along with $126,926.43 in expenses and a $500 incentive fee per class representative.

## I. BACKGROUND

Plaintiffs brought this consolidated nationwide class action on behalf of "all persons who purchased an iPhone 4 in the United States between June 24, 2010 and the date of final approval." Broadly speaking, the suit sought relief under state consumer protection laws for injuries allegedly resulting from an antenna defect that impacts the iPhone 4's cellular network reception.

1

On January 24, 2012, after Apple had produced substantial discovery but before the filing of any dispositive motions, the parties reached a settlement agreement (the "Agreement"). Two mediators, the Honorable Daniel Weinstein and Catherine Yanni, Esq of JAMS, supervised four mediation sessions leading to the settlement. The court preliminarily approved the agreement on February 17, 2012.

### A. Notice

Following preliminary approval, the claims administrator sent e-mail notice to 15.7 million class members, the number of eligible iPhone 4 purchasers for whom Apple retained email addresses. *See* Dkt. No. 53 at 6. Notice was also published in the April 2, 2012 edition of *USA Today* and the May 2012 issue of *Macworld*. *Id.* As Apple sold 27.1 million iPhone 4s in the U.S. during the settlement period, the parties estimate the size of the class to be between 15.7 million and 27.1 million, depending on the number of potential class members who purchased more than one iPhone 4.

### B. Settlement Terms

The agreement provides that: (1) any class member who files a claim form before August 28, 2012 is eligible to receive a cash payment of $15; (2) Apple will extend its "free bumper program"[1] for 18 months following discontinuation of the sale of the iPhone 4; and (3) Apple will not oppose a request for attorneys' fees up to $5.9 million.

### C. Claims, Opt-Outs and Objections

As of June 29, 2012, approximately 44,000 class members had filed claims for monetary recovery, 94 potential class members had opted out of the settlement, and 21 class members had filed objections. The number of claims represents somewhere between 0.16% and 0.28% of the total class, for a total cash recovery of approximately $660,000. None of the objectors appeared at the final approval hearing.

---

[1] Bumpers are rubber cases for the iPhone that fix the alleged reception problem. Plaintiffs allege that Apple initiated the "free bumper program," pursuant to which the company offered all iPhone 4 purchasers a complimentary bumper, around July 16, 2010. *See* Dkt. No. 14 (Consolidated Class Action Complaint) ¶ 139. It is not clear when Apple would have ended the free bumper program absent this settlement.

Case5:10-md-02188-RMW Document66 Filed08/10/12 Page3 of 9

## II. ANALYSIS

### A. Approval of the Settlement Agreement

On a motion for approval of a class action settlement, the court must assure itself that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* Instead, in analyzing the fairness of the settlement, courts in the Ninth Circuit consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining a class action; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

#### 1. *Churchill* Factors

Here, the *Churchill* factors weigh largely in favor of approval. Plaintiffs had potentially valid claims, but were likely to face significant hurdles on class certification (since some putative class members did not experience reception problems) and the merits (since it is not clear that the iPhone 4 is "defective" or that Apple made actionable misrepresentations). Further litigation would have certainly involved substantial time and discovery. Apple provided a large amount of discoverable material before the settlement, giving plaintiffs ample information to use in evaluating the strength of their case. The parties were represented by sophisticated counsel and negotiated with very experienced mediators. The mediators submitted a declaration reflecting their belief that the settlement is a "fair, reasonable and adequate compromise, considering all of the relevant issues." Dkt. No. 58-1, Ex. A ¶ 3. In addition, the small number of opt-outs and objections (115 in total) relative to the size of the class (at least 15.7 million) supports approval. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (18 objections

3

1  out of five million notices shows that "the class appears to be overwhelmingly in favor" of the
2  settlement).
3    On the other hand, the small number of claims suggests that the relief obtained by
4  plaintiffs is not of great significance to most class members, particularly in light of the large
5  number of individuals who ostensibly received direct e-mail notice. Relatedly, the court finds that
6  plaintiffs' valuation of the settlement, which includes the retail value of approximately 2.6 million
7  free bumpers distributed by Apple between July 2010 and the date of the final approval hearing—
8  a total of more than $75 million—is overstated. Although plaintiffs claim the lawsuit was the
9  "catalyst" for the free bumper program, they offer no evidence supporting this assertion or
10 showing that Apple would not have initiated the program in the absence of litigation.[2] In addition,
11 while the extension of the free bumper program clearly offers some value to the class, it is
12 uncertain how many class members will take advantage of this provision. In fact, at oral
13 argument, the parties conceded that there was a low claims rate, which they attributed to the fact
14 that the overwhelming majority of iPhone 4 users already have cases that solve the alleged
15 reception problem. The court therefore notes that while the true value of the settlement is difficult
16 to ascertain, it appears much closer to the actual monetary recovery of $660,000 than plaintiffs'
17 estimate of "over $75 million." Dkt. No. 521-1 at 13. Nevertheless, the court does not find the
18 settlement to be unfair or inadequate, particularly since class members were offered a choice of
19 either cash or a case that *undisputedly* fixes the alleged defect.

20  **2. Objections**

21   The court also finds that except for the objection to the size of the attorneys' fees request,
22 which is addressed below, the objections are not well-taken. First, several objectors contend that
23 $15 is insufficient to compensate them for their injuries. These objectors provide no further
24 explanation of the injury they suffered, and only two suggest alternative forms of relief: new
25 Apple products. The Ninth Circuit has cautioned that "settlement is the offspring of compromise;

---

[2] The complaint indicates that Apple initiated the "free bumper program" after receiving a torrent of negative publicity related to the iPhone 4's reception issues and an "open letter" from New York Senator Charles Schumer asking Apple to "remedy [the reception problem] free of charge." *See* Dkt. No. 14 at ¶¶ 112-39.

4

the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Furthermore, if any objector believed that "his or her personal claim was being sacrificed for the greater good ... they had the right to opt-out of the class." *Id.* Put another way, without more, objections seeking a "better" result are not sufficient to overturn a settlement agreement.

Other objectors complain that the claims process was overly burdensome. The court disagrees. Class members were required to provide only their name, address and iPhone serial number and to check a box verifying their reception problems in order to file a claim, and could do so by mail or electronically. A class member's name and address are necessary in order to provide him or her with a $15 check, and the serial number requirement is a reasonable measure to avoid fraud.

Another group of objectors—represented by attorneys who regularly represent objectors to class action settlements—argue without citation to authority that the court should require "all relevant court documents" to be posted on the settlement website. Given that key documents, including the court's preliminary approval order and the settlement agreement itself, are available on the website and that direct e-mail notice was sent to nearly 16 million people, the court finds this objection to be without merit.

These same objectors also contend that the class is "unascertainable" because the court will be "required to conduct an individual inquiry to determine whether [each member] had antenna trouble." Dkt. No. 55 at 4. However, as Apple has agreed to provide relief to any putative class member who files a claim form, no such inquiry is required. *Compare Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) ("Defining the purported class as 'all residents and businesses who have *received unsolicited facsimile advertisements*' requires addressing the central issue of liability to be decided in the case. Determining a membership in the class would essentially require a mini-hearing on the merits of each case.") (emphasis in original). This objection is therefore rejected.

1  Accordingly, the court concludes that the settlement is fair, reasonable, and adequate, and
2  grants the motion for final approval of the settlement agreement.

**B.  Attorneys' Fees, Expenses and Incentive Awards**

In a class action lawsuit, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Where, as here, California law claims predominate, California law governs the award of fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In general, the starting point of every fee award is the "lodestar" method. *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000). "A trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at 49-50. A credible measure of the "market value" of the legal services provided is the "percentage-of-the-benefit" analysis. *Id.* In addition, the lodestar calculation "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

Plaintiffs' counsel ("Counsel")—which include lawyers from twenty-three different law firms—request $5.9 million in attorneys' fees. This amount is equal to their combined lodestar with a 2.1x multiplier. *See* Rothken Decl. ¶ 25-27. Not surprisingly, it is also the largest amount to which Apple agreed not to object under the terms of the settlement. Nearly every objector, on the other hand, did object to the size of the attorneys' fees request.

While the court finds that the use of the lodestar method is appropriate, the 2.1x multiplier is not justified in this case. First, the lodestar calculation is very generous in that it includes the time of a multitude of attorneys (more than necessary to efficiently handle the case) at high end rates and based upon what appear to be liberally-kept time records. Second, the action involved *no* motion practice. In addition, while counsel brought this action on a contingent basis, thus incurring the risk of non-payment, the large number of firms competing to represent plaintiffs suggests that such a risk was relatively low. *See Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th

Case5:10-md-02188-RMW Document66 Filed08/10/12 Page7 of 9

819, 835 (Cal. Ct. App. 2001) ("[T]he astonishing speed of the race to the courthouse by such an extraordinary number of lawyers reflects their confidence they would not only prevail on the merits but be remunerated for their efforts."). Finally, as noted above, the relief provided by the settlement did not achieve a significant benefit for the class, as evidenced by the low claim rate and counsel's concession that most class members had already solved the problem addressed by this lawsuit. *See Yeagley v. Wells Fargo & Co.*, No. 05-03403 CRB, 2010 WL 2077013, at *4 (N.D. Cal. May 20, 2010) (considering the low participation rate and lack of enthusiasm from the class as factors to be considered in determining a fee award). The court is not convinced that the lawsuit was the main impetus for the bumper program, and counsel's emphasis on the initiation of that program as an "element" of the settlement is unpersuasive.

Counsel argue that the court should give deference to the facts that Apple agreed not to oppose the fees request and that the fees were negotiated independently of the award to the class. However, "[t]hat the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award. Ordinarily, a defendant is interested only in disposing of the total claim asserted against it ... the allocation between the class payment and the attorneys' fees is of little or no interest to the defense...." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Evans v. Jeff D.*, 475 U.S. 717, 733-34 (1986) (recognizing that "the possibility of a tradeoff between merits relief and attorney's fees" is often implicit in class action settlement negotiations, because "[m]ost defendants are unlikely to settle unless the cost of the predicted judgment, discounted by its probability, plus the transaction costs of further litigation, are greater than the cost of the settlement *package*") (emphasis added).

Accordingly, the court declines to apply the requested multiplier. The court awards $2,163,292.25 in fees, the amount of counsel's combined lodestar calculation as detailed in their declarations.[3] Although the court finds the lodestar generously computed, counsel should be

---

[3] Counsel seek an additional $645,729.25 in fees and $13,749.79 in expenses for non-lead plaintiffs' attorneys, but do not provide support for such a request. *See* Rothken Decl. ¶ 26 (noting simply that co-lead counsel had "received" non-lead plaintiffs' counsel's lodestar calculation). The

complimented and credited for resolving the case without court involvement and protracted litigation. The court also awards $126,926.43 in expenses, and a $500 incentive payment for each class representative.

It is so ordered.

DATED: August 10, 2012



Ronald M. Whyte
United States District Judge

court therefore denies this request without prejudice to a properly supported request filed at a later date.